Gail Garner, Pro Se
983 Brown Road
Rochester, New York 14622
(585) 544-8678



**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **GAIL GARNER, AS REPRESENTATIVE** | ) | **6:08–CV-6191** |
| **OF THE ESTATE OF ANGELO PALERMO,** | ) | |
| Plaintiff, | ) | **NOTICE OF FILING PLAINTIFF'S** |
| | ) | **RESPONSE IN OPPOSITION OF** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | **FOR FAILURE TO STATE A CLAIM** |
| | ) | **UPON WHICH RELIEF CAN BE** |
| v. | ) | **GRANTED OR, IN THE ALTERNATIVE** |
| | ) | **FOR A MORE DEFINITE STATEMENT** |
| **DII INDUSTRIES, LLC ASBESTOS PI TRUST,** | ) | |
| **MARK M. GLEASON, DOUGLAS C. ALLEN, and** | ) | |
| **MARCELLENE MALOUF** | ) | |
| Defendants. | ) | |

**PLEASE TAKE NOTICE** that Pro Se Plaintiff Gail Garner files this Motion of Response in Opposition to Defendants' DII Industries, LLC Asbestos PI Trust (the "Trust"), Mark M. Gleason ("Gleason"), Douglas C. Allen (the "Arbitrator" or "Allen") and Marcellene Malouf ("Malouf," and collectively with the Trust, Allen, and Gleason, the "Defendants") Motion to Dismiss Plaintiff's Complaint For Failure To State A Claim Upon Which Relief Can Be Granted Or, In The Alternative, For A More Definite Statement, pursuant to the Motion Scheduling Order of the United States District Court, Western District of New York.[1]

---

[1]Plaintiff's Affidavit of Law, in Support of Plaintiff's Motion of Response, In Opposition to Defendant's Motion to Dismiss, for failure to state a claim upon which relief can be granted or, in the alternative, for a more definite statement and all attached exhibits are expressly incorporated herein by reference.

*Garner v. DII Industries, LLC 6:08-cv-6191*

As grounds for this Motion, pro se Plaintiff would respectfully show that it is clear on the face of the Complaint, with attachments; Defendants' Authorization To Commence Litigation pursuant to section 7.6 of the Trust Distribution Procedures; the Defendants' Motion to Dismiss; and pursuant to Civil Rule of Procedure 12(b) (6) and 12(e), that the Plaintiff stated a claim upon which relief can be granted. See Complaint [Doc # 1] [2]

**WHEREFORE**, the reasons more particularly set forth in the attached Affidavit of Law in Support of Plaintiff's Motion of Response In Opposition to Defendants' Motion to Dismiss filed by Plaintiff Gail Garner, pro se, as Representative for the Estate of Angelo Palermo, respectfully requests that the United States District Court Western District of New York vacate the Defendants' Motion to Dismiss.

The oral argument will be held before the Honorable Charles J. Siragusa, on December 11, 2008 at 3:00 p.m. at 1360 United States Courthouse, 100 State Street, Rochester, New York.  One courtesy copy of each filing will be provided to the Court.

Respectfully submitted this 29th day of September 2008.

Gail Garner, Pro Se
Representative For the Estate of Angelo Palermo

---

[2] Pro se plaintiff has filed based upon a number of grounds, including an Asbestos Personal Injury Product Liability, violation of Bankruptcy Code, not following Trust Distribution Procedures, breach of fiduciary duties, and unfair practices.

Gail Garner, Pro Se
983 Brown Road
Rochester, New York 14622
(585) 544-8678

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document, **NOTICE OF FILING OF PLAINTIFF'S**

**MOTION OF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A**

**CLAIM UPON WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE**

**STATEMENT,** was served upon Counsel of record identified on this Proof of Service, via U.S. Mail, at the following

addresses:

> Andrew L. Morrison (AM 1071)
> K&L Gates, LLP
> 599 Lexington Avenue
> New York, New York 10022
>
> Beth W. Bivans (TX Bar 00797664)
> K&L Gates, LLP
> 1717 Main Street, Suite 2800
> Dallas, Texas 75201

I further certify that on this date I filed the foregoing document with the Clerk of the United States District Court

Western District of New York.

Dated this 29th day of September, 2008.

_____Gail Garner_____

Gail Garner, Pro Se Representative, For the Estate of Angelo Palermo

Gail Garner, Pro Se
983 Brown Road
Rochester, New York 14622
(585) 544-8678

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **GAIL GARNER, AS REPRESENTATIVE** ) | 6:08–CV-6191 |
| **OF THE ESTATE OF ANGELO PALERMO,** ) | |
| **Plaintiff,** ) | **PLAINTIFF'S AFFIDAVIT OF LAW IN** |
| ) | **SUPPORT OF PLAINTIFF'S MOTION** |
| ) | **OF RESPONSE IN OPPOSITION TO** |
| ) | **DEFENDANTS' MOTION TO DISMISS,** |
| **v.** ) | **FOR FAILURE TO STATE A CLAIM** |
| ) | **UPON WHICH RELIEF CAN BE GRANTED** |
| ) | **OR, IN THE ALTERNATIVE,** |
| ) | **FOR A MORE DEFINITE STATEMENT** |
| **DII INDUSTRIES, LLC ASBESTOS PI TRUST,** ) | |
| **MARK M. GLEASON, DOUGLAS C. ALLEN, and** ) | |
| **MARCELLENE MALOUF** ) | |
| **Defendants.** ) | |

## TABLE OF CONTENTS

I.     SUMMARY OF MOTION ................................................................................ 1

II.    BACKGROUND FACTS ........................................................................... 3

    A.    The Trust Distribution Procedures.......................................……… 3

    B.    The Trust's Denial of Plaintiff's Claim.................................……… 3

        1.    Plaintiff's Claim Satisfies the Trust's Medical Diagnosis Criteria................. 7

        2.    Plaintiff's Claim Satisfies the Applicable Statute of Limitations.................... 8

        3.    The Pro Bono Evaluation and Arbitrator Uphold the Trust's Decision............. 8

        4.    Plaintiff Rejects the Trust's, the Evaluator's and the Arbitrator's Decisions and Files this Action........................................................ 8

III.    LEGAL STANDARD.................................................................... 8

    A.    Standard for Motion Vacated Under Rule 12(b)(6)…………………………….... 8

    B.    Standard for Requiring a More Definite Statement Under Rule 12(e)………….. 9

IV.    ARGUMENTS AND AUTHORITIES

    A.    The Claims Against the Individual Defendants Should Not Be Dismissed.............. 9

        1.    All Claims Against Gleason and Malouf Should Not Be Dismissed, as Plaintiff is Asserting Them by Order of the Bankruptcy Court.................... 10

        2.    Claims Against Defendant Allen as an Arbitrator Based on Arbitrator Immunity, versus, as an Arbitrator Based on Violation of DII Trust ADR ....... 12

    B.    The Complaint Does State Legally Recognizable Causes of Action...................... 13

        1.    Plaintiff's Claim of Violation of 11 U.S.C. § 524 ............................................. 13

        2.    Plaintiff's Claim for "Unfair Practices" ………………………..………………... 14

        3.    Plaintiff's Asserts a Claim For Breach of Fiduciary Duty…………………….... 16

        4.    Plaintiff's Claim "Not Following Trust Distribution Procedures" (TDP)............ 17

    C.    Plaintiff Stated A Cognizable Claim, Not Barred…………………………….... 18

        1.    Plaintiff's Claim is Within the Statute of Limitations………………………….. 19

        2.    Plaintiff's Claim has Sufficient Medical Diagnosis……………………………. 19

V.    ARGUMENT AND AUTHORITIES AGAINST A MORE DEFINITE STATEMENT........... 23

VI.    CONCLUSION…………………………………………………………………….. 24

## TABLE OF AUTHORITIES

### FEDERAL

PHONOMETRICS INC. V. HOSPITALITY FRANCHISE SYS. INC., 203 F.3D 790, 794 (FED.CIR.2000)............ 9

HARRISON V. METROPOLITAN LIFE INS. CO., S.D.N.Y.2006, 417 F.SUPP.2D 424

    FEDERAL CIVIL PROCEDURE – 1832. ..................................................................... 9

DE LOACH V. CROWLEY'S, INC. C.A.5TH, 1942, 128 F.2D 378, 380 (SIBLEY, J.)............................... 9

SEE MARS STEEL V. CONTINENTAL ILLINOIS NAT'L BANK & TRUST, 834 F.2D 677, 681 (7TH CIR.1987)....... 10

MEETINGS & EXPOSITIONS, INC. V. TANDY CORP., 490 F.2D 714, 717 (2D CIR. 1974) ....................... 11

VARI-O-MATIC MACHINE CORP. V. NEW YORK SEWING MACHINE ATTACHMENT CORP.,

    629 F.SUPP. 257, 258 (S.D.N.Y.1986). .................................................................... 11

IN RE CINDERELLA CLOTHING INDUSTRIES, INC. 93 B.R. 373 (BANKR. E.D. PA. 1988)........................... 11

IN RE POLAR MOLECULAR CORP., 195 B.R. 548, 29 BANKR. CT. DEC. (CRR) 77 (BANKR. D. MASS. 1996), 11

QUALIFICATION OF ARBITRATORS 4 AM JUR 2D. ALTERNATIVE DISPUTE RESOLUTION §§ 154 ET SEQ.......... 13

BANKRUPTCY CODE 11 U.S.C. § 524(G)(2)(B)(II)(V)................................................................ 14

U.S. V. COLLINS, M.D.PA. 1975, 395 F. SUPP 629................................................................ 21

GRIMES V. HOFFMANN-LAROCHE, INC. D.N.H. 1995, 907 F. SUPP.33........................................... 21

FED. R. EVID. 408; SEE § 22:24........................................................................................ 22

U.S. V. SCAVO, C.A.8 (MINN.) 1975, 593 F 2D837............................................................... 23

## SUMMARY OF
## EXHIBITS

### PLAINTIFF'S PREVIOUS EXHIBITS

| | |
|---|---|
| Exhibit 1 | Correspondence of DII Trust and Estate of Angelo Palermo |
| Exhibit 2 | DII Trust Pro Se Claim Form |
| Exhibit 3 | DII Exhibit "A" Entry List and Codes |
| Exhibit 4 | Subsidiary Listing |
| Exhibit 5 | History of Symington |
| Exhibit 6 | Angelo Palermo's Social Security Record, 1941-1945 Symington-Gould, 'Design For Growth' – Average Incomes |
| Exhibit 7 | DII Trust Distribution Procedures (TDP) |
| Exhibit 8 | DII Trust Pro Se Procedures |
| Exhibit 9 | DII Trust Alternative Dispute Resolution (ADR) Procedures |
| Exhibit 10 | DII Election Form and Agreement For Non-Binding Arbitration, Signed by All Parties As Accepted and Consented To |
| Exhibit 11 | Copies of Prior Settlement Checks |
| Exhibit 12 | Listing of Members of the Trust |
| Exhibit 13 | Sworn Affidavit of Gail Garner, Duly Authorized Representative |

### PLAINTIFF'S ATTACHED EXHIBITS

| | |
|---|---|
| Exhibit 14 | Reviewed Claim by DII Trust Director of Claims |
| Exhibit 15 | Private Adjudication Coordinator, Arbitrator, Legal Representative Eric D. Green |
| Exhibit 16 | Trust's Brief and Supplement to Arbitrator |
| Exhibit 17 | Defendant's Response In Support of Plaintiff's Motion to Vacate the Conditional Transfer Order (CTO309) |
| Exhibit 18 | Medical Summary, Mesothelioma Description, Pictures |
| Exhibit 19 | Trust's Arguments to Pro Bono Evaluator |
| Exhibit 20 | Documents of Elihu Insulbuch |
| Exhibit 21 | Johns-Manville; Celotex; Eagle-Picher; and H. K. Porter Trust comparisons |

### DEFENDANT'S PREVIOUS EXHIBITS

| | |
|---|---|
| Exhibit A | Trust Distribution Procedures (TDP) |
| Exhibit B | Record Review Report Dated July 11, 2002 Dr. William Beckett |
| Exhibit C | Decision of Pro Bono Evaluator |
| Exhibit D | Amended Order Nunc Pro Tunc to July 16, 2004 |
| Exhibit E | Trust Agreement for the DII Trust |

**PLAINTIFF'S <u>AFFIDAVIT OF LAW IN SUPPORT OF PLAINTIFF'S MOTION OF RESPONSE IN</u> <u>OPPOSITION TO DEFENDANTS' MOTION</u> TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), Plaintiff Gail Garner ("Claimant Representative Pro Se") files this Affidavit of Law in Support of Plaintiff's Motion of Response in Opposition to Defendants' DII Industries, LLC Asbestos PI Trust (the "Trust"), Mark M. Gleason ("Gleason"), Douglas C. Allen (the "Arbitrator" or "Allen"), and Marcellene Malouf ("Malouf," and collectively with the Trust, Allen, and Gleason, the "Defendants") Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted, or, in the Alternative, for a More Define Statement, pursuant to the Motion Scheduling Order of the United States District Court Western District of New York entered 9/2/2008 at 3:31 PM EDT and filed on 9/2/2008.

**I. SUMMARY OF MOTION**

Plaintiff filed an asbestos personal injury tort liability claim with the DII Industries, LLC claim on April 4, 2006, for her deceased father, Angelo Palermo. After due process, the DII Trust's Claim Processor, in accordance with the Trust's Distribution Procedures (TDP), confirmed that the Estate of Angelo Palermo provided conclusive evidence of exposure to their asbestos containing products, at valid worksites, with a valid latency period in the asbestos industry, as a union mason spray-coating and handling asbestos, while working directly for one or more of the Halliburton or Harbison-Walker Entities or their predecessors, with high asbestos exposure. While Plaintiff's claim qualified as a valid Asbestos Unsecured DII PI Trust Legal Claim, within the Individual Review (Exceptional Claim) Process, the Trust disallowed the claim [Exhibit 14] and said it failed to meet (1) sufficient medical diagnosis; (2) the 3 year requirement under New York's Statute for filing of a lawsuit upon diagnosis of an asbestos-related disease; and (3) the requirements, and the claim will not be reviewed as an Extraordinary Claim. Plaintiff's claim went through pro bono evaluation, and nonbinding arbitration. Both disallowed Plaintiff's claim without categorizing it or sending it to their Extraordinary Claims Panel, and not to value arbitration, per procedure. DII Trust authorized Plaintiff to file suit. Prior to filing a formal Complaint,

plaintiff wrote letters to the defendants Trust, Trustee, and Executive Director. Plaintiff's issues were ignored and not addressed. As a result of the DII Trust letter of Authorization to file suit, dated October 29, 2007 [Exhibit 1], the plaintiff initiated the Complaint Form and documented 'Cause of Action' and 'Nature of Suit' as an Asbestos Personal Injury Product Liability, as stated on the Complaint Form. The Trust was created pursuant to Section 524(g) of the Bankruptcy Code to assume and discharge the asbestos liabilities of bankrupt affiliates of Halliburton and Harbison-Walker. Plaintiff documented 'violation of Bankruptcy Code 11 U.S.C.§524(g)(2)(b)(ii)(v)', as the Trust did not abide by Section 524(g) and denied Plaintiff's right to a recovery of damages. Plaintiff's letter of December 27, 2007 [Exhibit 1], to the defendants: Trust; Trustee; and Executive Director, resulted in a response letter dated January 7, 2008 [Exhibit 1] from the Trust's counsel (Ms. Bivans); as partially quoted:

- *"Ms. Garner's letter contains extremely unwarranted accusations of "breaches of fiduciary duty" "unfair practices" and failure to follow the Trust Distribution procedures.... Thus, if you or your client have any legal basis whatsoever to support your client's unfounded allegations, please assert them by filing suit in accordance with the TDP, and cease and desist from further direct communications with my clients."*

With the comments noted above from the Trust's counsel describing plaintiff's issues in question; the Plaintiff completed the Complaint Form adding: not following Trust Distribution Procedures, unfair practices, and breaches of fiduciary duty. Within this Affidavit, Plaintiff will address her claim of a valid compensable asbestos personal injury liability tort claim, in addition to, defendants' non-compliance of the DII Trust Distribution Procedures and other breaches, showing entitlement for relief. Plaintiff requests that Exhibit 1 documents be considered as a vital part of this Affidavit, as they address issues already responded to, that are restated in the defendants' Memorandum. Plaintiff pro se, clearly showed on the face of the Complaint, filed on April 25, 2008, with attachments; Defendants' Authorization To Commence Litigation of October 29, 2007, pursuant to section 7.6 of the Trust Distribution Procedures; Defendant's Response In Support of Plaintiff's Motion to Vacate the Conditional Transfer Order (CTO-309); the Defendants' Memorandum of Law In Support

of Motion to Dismiss; and pursuant to Civil Rules of Procedure 12(b)(6) and 12(e), that the Plaintiff

stated a claim upon which relief can be granted. Plaintiff requests defendants' Motion to Dismiss, vacated.

## II. BACKGROUND FACTS

### A. TRUST DISTRIBUTION PROCEDURES ("TDP")

The defendant and the plaintiff agree that the Trust was created pursuant to Section 524(g) of the Bankruptcy

Code. The DII Industries, LLC Asbestos PI Trust Distribution Procedures ("TDP") contained herein provide for

resolving all Asbestos Unsecured PI Trust Claims for which a Halliburton Entity or a Harbison-Walker Entity

has legal responsibility, as provided in and required by the Debtors' Joint Prepackaged Plan of Reorganization

Under Chapter 11 of the Bankruptcy Code ("Plan") and the DII Industries, LLC Asbestos PI Trust Agreement

(the "Asbestos PI Trust Agreement"). The Plan and Asbestos PI Trust Agreement establish the DII Industries,

LLC Asbestos PI Trust (the "Asbestos PI Trust"). The Trustee shall implement and administer this TDP in

accordance with the Asbestos PI Trust Agreement.

### B. The Trusts Denial of Plaintiff's Claim

The pro se plaintiff filed a claim with the Trust on April 6, 2006 [Exhibit 2, DII Trust Pro Se Claim Form],

seeking payment in connection with the death of her father Angelo Palermo, who died over forty-two years ago

on April 23, 1966. Trust states Plaintiff's claim satisfied the TDP's exposure criteria but was denied. The

Plaintiff filed under the Individually Review (Exceptional Claim) Process 5.3(b)(1) [Exhibit A - Page 17]. Plaintiff

submitted credible evidence to resolve the medical diagnosis criteria and using the Discovery Rule met the

statute of limitation requirement. The Plaintiff requested numerous times for Extraordinary Claim review but

the Trust did not comply. Plaintiff appealed her claim under the mandatory Alternative Dispute Resolution

(ADR) Procedures for pro bono evaluation and non-binding arbitration.

Plaintiff Gail Garner and defendant DII Executive Director Marcellene Malouf signed the Election Form and

Agreement For Nonbinding Arbitration [Exhibit 10]. The DII Trust selected three Arbitrators. The Trust

eliminated one. The Private Adjudication Coordinator ("Coordinator") sent the backgrounds of the remaining

two Arbitrators [Exhibit 15, May 3, 2007].  Plaintiff then eliminated Lawrence Fitzpatrick, based on his background and affiliations with other Trusts.

- The Coordinator sent a letter dated May 10, 2007 [Exhibit 15] stating: *"The remaining potential arbitrator is Mr. Douglas C. Allen.  As the Private Adjudication Coordinator, I must confirm that Mr. Allen has no conflicts in this matter and that his schedule will permit him to conduct the arbitration within the time period set forth in the ADR Procedure.  As soon as I receive this confirmation, I will notify you of the appointment"*.  The Coordinator's letter of May 18, 2007 stated: *"This letter serves as confirmation that Douglas C. Allen has agreed to serve as the arbitrator in the above-referenced matter."*  No disclosure was included.

The DII Trust hired an outside law firm (Hughes & Luce a.k.a. K&L Gates), for the arbitration submissions. After plaintiff and defendants received the opposing sides positions and arguments, both sides sent a supplement [Exhibit 1 & 16].  The nonbinding arbitration resulted in a hearing in Boston, Massachusetts on August 21, 2007 at Resolutions, LLC.  The "Attendees" were to be: Arbitrator Douglas C. Allen; DII Executive Director Marcellene Malouf; DII in-house Attorney Nancy E. Freeman; Trust Counsel from Hughes & Luce, LLP Beth W. Bivans; and Gail Garner, pro se Plaintiff.  DII attorney Nancy E. Freeman did not attend.  Plaintiff brought her son, Thomas Semproch and his friend Luisa Kubitz. Once the Arbitration Hearing was concluded, the defendant Arbitrator Douglas C. Allen, defendant Marcellene Malouf, and Trust counsel Beth W. Bivans ("the three people") left the arbitration room together**.** The plaintiff Gail Garner, son Thomas Semproch and friend Luisa Kubitz remained in the room alone.  The three people returned. Defendant Marcellene Malouf shook the plaintiff's hand and said, *"Go after the other Trusts"*.  Plaintiff said, *"The statute of limitations has expired"*.  The defendant Marcellene Malouf said, *"The other Trusts have different rules"*.  All Attendees left the room to return home. Plaintiff contacted the Coordinator and received the Award results [Exhibit 1 &15]:

- *"Pursuant to the DII Industries, LLC Asbestos PI Trust Alternative Dispute Resolution Procedures, a non-binding arbitration hearing in the matter of Angelo Palermo was conducted August 21, 2007 in Boston, Massachusetts.  Having heard the testimony and presentations by Ms. Garner and Trust counsel, reviewed the*

initial and supplemental arbitration briefs filed by Ms. Garner and the Trust, _reviewed the DII Industries, LLC Asbestos PI Trust Distribution procedures,_ and carefully considered all the arguments and evidence of the parties _pursuant to the Trust Alternative Dispute Resolution procedures,_ I find in favor of the DII industries, LLC Asbestos PI Trust and award claimant _$0._"   Signed Douglas C. Allen, Arbitrator

▪  The plaintiff sent a letter dated September 9, 2007 [Exhibit 1], notifying the Coordinator Detta D. Corona, defendant Marcellene Malouf, Trust attorney Nancy Freeman, Trust counsel Beth W. Bivans, and defendant Douglas C. Allen, of plaintiff's rejection of the nonbinding award.   No response from anyone.  Plaintiff hired a family attorney, Mr. Taddeo, to send another rejection notice, which was dated October 2, 2007 [Exhibit 1]. The DII Trust counsel sent a letter on October 29, 2007 confirming receipt of the October 2, 2007 letter of rejection, stating plaintiff pursued this claim through every level of ADR offered by the trust and has been denied compensation. Authorization was given pursuant to section 7.6 of the TDP to pursue litigation and file a lawsuit within 180 days after receipt of their letter of October 29, 2007 [Exhibit 1].

▪  Note:  Defendant's Memorandum of Motion to Dismiss, on page 7 states the following: _"On September 9, 2007, Plaintiff rejected the Arbitrator's award, and, on April 25, 2008, Plaintiff filed her Complaint"._

Prior to the plaintiff filing her Complaint, plaintiff asked her attorney to write to the Trust and on November 6, 2007 Plaintiff's Attorney wrote to the Trust's counsel, [Exhibit 1] stating:

▪  "With regard to your letter of October 29, 2007, the same was forwarded to Mrs. Garner and she has now asked that I inform you that it is her position that she has not pursued this claim through every level of the Trust Distribution Procedures as offered by the Individual Review Claims Process inasmuch as the stated goal of the DII Asbestos PI Trust is to treat all claimants equitably and in accordance with the requirements of Section 524(g) of the bankruptcy code.  More specifically, Mrs. Garner has requested and once again does request that the claim herein go before and be presented to the Extraordinary Claim Panel pursuant to DII Industries, LLC Asbestos PI Trust, Second Amended Trust Distribution Procedures, Section 2, page 22, 5.4(a) and, in that regard, your consent is requested."  (Note: Exhibit A, page 21).

After plaintiff received the Trust counsel's response, dated November 20, 2007 [Exhibit 1], Plaintiff asked her attorney to put a cover letter on a letter she wrote [December 3, 2007, Exhibit 1] and send it to the DII Trustee, defendant Mark M. Gleason, and copy in defendant Marcellene Malouf, and counsel Beth W. Bivans.

▪    Plaintiff's attorney's cover letter said: "*It would appear that her claim qualifies for and should be submitted to an Extraordinary Claims Panel for review as directed by DII Industries, LLC Asbestos PI Trust Second Amended Trust Distribution Procedures. <u>Your consent with the approval of the Asbestos TAC and the Legal Representative is requested.</u>*"

The plaintiff asked for Mr. Gleason's assistance, as Trustee of the DII Trust.  The letter outlined that the plaintiff's claim was not being processed correctly, in non-compliance with the DII TDP.  The plaintiff offered evidence of the processing of her Manville Trust Claim (Manville is the model for all Trusts, Exhibit 21), as an example for the processing of her DII Claim.  In addition, noting that defendant Mark M. Gleason is also a Trustee of the H.K. Porter Trust, in which he had previously qualified plaintiff's claim as a valid mesothelioma claim for the H.K. Porter Trust, and offered Plaintiff a settlement.

<u>No Response by Defendants Mark M. Gleason or Marcellene Malouf to the 12-page letter.</u>

▪    A letter dated December 10, 2007 [Exhibit 1], came from the Trust's counsel, addressed to Mr. Taddeo, copied to defendant Marcellene Malouf <u>only</u>, and stated: "*I am in receipt of your letter dated December 3, 2007, which was sent directly to my client, Mr. Mark Gleason, a Trustee of the DII Asbestos Trust.  First, please note that Mr. Gleason and the Trust are represented by counsel in connection with Ms. Garner's claim and further contact with my client directly is prohibited pursuant to DR 7-104(A)(1) of the New York Lawyer's Code of Professional Conduct. Please direct any further inquiry to me.  Second, as we have previously communicated, Ms. Garner's claim has been thoroughly reviewed by the Trust, and it does not qualify for consideration by the Extraordinary Claims Panel.  <u>The Trust's position on this matter has been discussed not only with the Trustees, but also with the members of the existing Extraordinary Claims Panel, who are in agreement.  Ms. Garner's claim has been disallowed by the Trust and that decision is final.</u>*"

On December 27, 2007 [Exhibit 1], plaintiff responded to Trust's counsel Beth W. Bivans and copied in defendants Mark M. Gleason, Marcellene Malouf, and her attorney Joseph Taddeo.  The plaintiff explained that her attorney's representation was limited to giving notice of the rejection, as previously documented by Mr. Taddeo to the Trust, and as a pro se claimant, asked that all further correspondence be sent to me (the plaintiff).  In that letter, plaintiff went into great detail, quoting that the Trust must comply with Section 524(e), and is consistent with Sections 524(g) and 1129, and other applicable provisions of the Bankruptcy Code.  The Trustee of the Trust shall implement and administer this TDP in accordance with the Trust Agreement. Plaintiff's letter detailed all the issues of non-compliance by the Trust and it's members, per the TDP and ADR; and documented the correct procedure.

The Trust's Counsel sent a response letter on January 7, 2008 [Exhibit 1], noted here on Page 2, addressed to "Mr. Taddeo".   After exhausting all administrative remedies, Plaintiff filed her Complaint on April 25, 2008, with the United States District Court Western District of New York.

### 1.  Plaintiff's Claim Satisfies the Trust's Medical Diagnosis Criteria

Plaintiff's claim has been documented as an Individually Reviewed (Exceptional Claim) Process in which, the Trust may determine that although a particular requirement in the criteria for a Scheduled Disease Category has not been met, in an Exceptional Claim other factors and evidence satisfy the objective of that requirement, and, therefore, the claim should be considered to be within the Scheduled Disease Category.  Plaintiff's claim is eligible, as the Trust underlined [Exhibit A, Page 17,]...DETERMINING WHETHER THE CLAIM WOULD BE COMPENSABLE IN THE TORT SYSTEM EVEN THOUGH IT DOES NOT MEET THE PRESUMPTIVE MEDICAL/EXPOSURE CRITERIA....  Plaintiff offered a great deal of medical evidence proving that the evidence creditably supported, with reasonable medical probability, that the correct diagnosis of Mr. Palermo's illness was peritoneal mesothelioma, confirmed by asbestos experts, under Federal Rule of Evidence 702, Testimony by Experts. By precedent, four other Trusts concluded a valid mesothelioma claim from the plaintiff's medical evidence, using the same medical standards. Exceptional Medical Claims, S.758 Sec. 205.

## 2.  Plaintiff's Claim Satisfies the Applicable Statute of Limitations

Under the Discovery Rule, Plaintiff's claim satisfies the statute of limitations.  In addition, there was a stay that tolled the statute.  Plaintiff filed additional claims within a 6-month period of settling her first claim and qualified.  The footnote will be addressed on page 23 of this document.

## 3.  The Pro Bono Evaluator and Arbitrator Uphold the Trust's Decision

The Trust, pro bono and the nonbinding arbitrator denied the claim.  The Trust, pro bono evaluator, and Trust's Motion To Dismiss document [Page 4 B], confirmed that the plaintiff's claim satisfied the TDP's exposure criteria, thus plaintiff qualified as a valid asbestos unsecured PI Trust claim per procedure [Exhibit 9 page 2A].  Plaintiff requested numerous times to have her claim reviewed by the Extraordinary Claims Panel [Claim Form Exhibit 2, and letters with Arbitration 2007 submissions, Exhibit 1]. The plaintiff's claim was not processed in compliance with the TDP, to categorize, submit it to an Extraordinary Claims Panel, and value arbitration.

## 4.  Plaintiff Rejects the Trust's, the Evaluator's and the Arbitrator's Decisions and Files this Action

Plaintiff rejected the Trust's, pro bono's, and nonbinding arbitrator's decision, in a letter dated September 9, 2007, which was never acknowledged (except by the Trust's counsel in the August 25, 2008 Motion to Dismiss, page 7).  The Plaintiff was ignored until she hired an attorney to send another letter on October 2, 2007, which the Trust acknowledged and authorized the plaintiff to file suit.  Plaintiff filed on April 25, 2008.

## III. LEGAL STANDARD

## A.  Standard for Motion Vacated Under Rule 12(b)(6)

Plaintiff pro se, clearly showed on the face of the Complaint, filed on April 25, 2008, with attachments; Defendants' Authorization To Commence Litigation of October 29, 2007, pursuant to section 7.6 of the Trust Distribution Procedures; Defendant's Response In Support of Plaintiff's Motion to Vacate the Conditional Transfer Order (CTO-309); the Defendants' Memorandum In Support of Motion to Dismiss; and pursuant to Civil Rules of Procedure 12(b)(6), that the Plaintiff stated a claim upon which relief can be granted.

❖ PHONOMETRICS INC. V. HOSPITALITY FRANCHISE SYS. INC., 203 F.3D 790, 794 (FED.CIR.2000) (NOTING THAT THE COMPLAINT "CONTAINS ENOUGH DETAIL TO ALLOW THE DEFENDANTS TO ANSWER. RULE 12(B)(6) REQUIRES NO MORE.").

❖ IN DECIDING A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, COURTS MAY CONSIDER ANY WRITTEN INSTRUMENT ATTACHED TO THE COMPLAINT AS AN EXHIBIT OR ANY STATEMENTS OR DOCUMENTS INCORPORATED IN IT BY REFERENCE, AND DOCUMENTS THAT THE PLAINTIFFS EITHER POSSESSED OR KNEW ABOUT AND UPON WHICH THEY RELIED IN BRINGING THE SUIT. *HARRISON V. METROPOLITAN LIFE INS. CO., S.D.N.Y.2006, 417 F.SUPP.2D 424 FEDERAL CIVIL PROCEDURE – 1832.*

▪ Plaintiff illustrates defendant's understanding of plaintiff's claim, as quoted, on the defendant's Response In Support of Plaintiff's Motion to Vacate the Conditional Transfer Order (CTO-309) [Exhibit 17, page 3]: *"There are multiple, distinct reasons why the conditional transfer of this case should be vacated. First, while asbestos personal injury is obviously the backdrop for Plaintiff's claims, she essentially challenges the process used by the Trust in denying her claims. These processes were fixed by order of the Bankruptcy Court and through the adoption of Trust Distribution Procedures ("TDP") that expressly permit Plaintiff to pursue her claim only in New York and prohibit this suit from being "consolidated with any other lawsuit".*

❖ THE FEDERAL RULES RECOGNIZE THAT PLEADINGS ARE NOT AN END IN THEMSELVES. AS STATED BY ONE COURT OF APPEALS: "UNDER THE RULES * * * A CASE CONSISTS NOT IN THE PLEADINGS, BUT THE EVIDENCE, FOR WHICH THE PLEADINGS FURNISH THE BASIS. CASES ARE GENERALLY TO BE TRIED ON THE PROOFS RATHER THAN THE PLEADINGS." DE LOACH V. CROWLEY'S, INC. C.A.5TH, 1942, 128 F.2D 378, 380 (SIBLEY, J.).

**B.**    **Standard for Requiring a More Definite Statement Under Rule 12(e)**

Plaintiff's claim is not vague or ambiguous, and it is possible for the Defendants to frame a response, as they did, noted above.

## IV. ARUGUMENT AND AUTHORITIES

**A.**    **The Claims Against the Individual Defendants Should Not Be Dismissed**

Plaintiff's claim against Mark M. Gleason, Marcellene Malouf, and Douglas C. Allen should not be dismissed. Pursuant to the Confirmation Order creating the Trust, plaintiff is entitled to relief from the Trust, Trustees or officers or employees of the Trust, for such individuals' own breach of trust committed or willful misappropriation. Plaintiff states defendants acted and in-acted with deliberate reckless indifference and disregard of the truth, in willful violation of duty, bad faith, and not merely on a disallowance of "her" claim; that duties that are required to in accordance with, all provisions and purposes of the trust, and in the best interest of the beneficiaries, of reasonable care and skill. Plaintiff alleged through communication letters (rejection and complaints) at the time of the occurrence [Exhibit 1], and the Complaint Doc. #1 (asbestos tort liability claim, violation of Bankruptcy Code, not following Trust procedures, unfair practices and breach of fiduciary duty), that the Defendants DII Trust, Mark Gleason, Marcellene Malouf and Douglas Allen committed such breaches.

➢ Exhibit E, Page 12: 4.4- NO TRUSTEE, OFFICER, OR EMPLOYEE OF THE ASBESTOS PI TRUST, MEMBER OF THE ASBESTOS TAC, OR PERSON SERVING AS LEGAL REPRESENTATIVE SHALL BE LIABLE TO THE ASBESTOS PI TRUST TO ANY PERSON HOLDING AN ASBESTOS UNSECURED PI TRUST CLAIM, OR TO ANY OTHER PERSON, EXCEPT FOR SUCH INDIVIDUAL'S OWN BREACH OF TRUST COMMITTED IN BAD FAITH OR WILLFUL MISAPPROPRIATION.

➢ Exhibit E Page 5, (xv) IN ACCORDANCE WITH ARTICLE 4.6, INDEMNIFY (AND PURCHASE INSURANCE INDEMNIFYING) THE TRUSTEES, THE LEGAL REPRESENTATIVE, THE MEMBERS OF THE ASBESTOS TAC, AND THE MEMBERS, OFFICERS, EMPLOYEES, AGENTS, ADVISORS, AND REPRESENTATIVES OF THE ASBESTOS PI TRUST AND THE LEGAL REPRESENTATIVE TO THE FULLEST EXTENT THAT A CORPORATION OR TRUST ORGANIZED UNDER THE LAW OF THE ASBESTOS PI TRUST'S SITUS IS ENTITLED TO INDEMNIFY AND/OR INSURE ITS DIRECTORS, TRUSTEES, OFFICERS, EMPLOYEES, AGENTS, ADVISORS, AND REPRESENTATIVES;

1. **All Claims Against Gleason and Malouf Should Not Be Dismissed As Plaintiff is Asserting Them by Order of the Bankruptcy Court**

❖ ONCE APPROVED, A SETTLEMENT AGREEMENT IS INTERPRETED AS A CONTRACT. *SEE MARS STEEL V. CONTINENTAL ILLINOIS NAT'L BANK & TRUST,* 834 F.2D 677, 681 (7TH CIR.1987); ABSENT CIRCUMSTANCES TO

SUPPORT VOIDING THOSE AGREEMENTS, THE COURTS HAVE "NOT ONLY THE POWER BUT THE DUTY TO ENFORCE A SETTLEMENT AGREEMENT WHICH IT HAS APPROVED." *MEETINGS & EXPOSITIONS, INC. V. TANDY CORP.*, 490 F.2D 714, 717 (2D CIR. 1974) *VARI-O-MATIC MACHINE CORP. V. NEW YORK SEWING MACHINE ATTACHMENT CORP.*, 629 F.SUPP. 257, 258 (S.D.N.Y.1986).

❖ ALL COURTS AGREE THAT CONFIRMATION OF A PLAN DOES NOT AUTOMATICALLY TERMINATE THE BANKRUPTCY COURT'S JURISDICTION. ACCORDING TO THE CONVENTIONAL FORMULATION OF THE RETAINED JURISDICTION DOCTRINE, THE BANKRUPTCY COURT'S JURISDICTION CONTINUES AFTER CONFIRMATION "TO PROTECT ITS [CONFIRMATION] DECREE, TO PREVENT INTERFERENCE WITH THE EXECUTION OF THE PLAN AND TO AID OTHERWISE IN ITS OPERATION. IN RE CINDERELLA CLOTHING INDUSTRIES, INC. 93 B.R. 373 (BANKR. E.D. PA. 1988). SEE ALSO IN RE POLAR MOLECULAR CORP., 195 B.R. 548, 29 BANKR. CT. DEC. (CRR) 77 (BANKR. D. MASS. 1996), WHERE THE COURT INDICATED THAT POST CONFIRMATION JURISDICTION EXTENDED TO MATTERS INVOLVING "EXECUTION, IMPLEMENTATION, OR INTERPRETATION" OF THE PROVISIONS OF THE CONFIRMED PLAN.

➢ [Exhibit E, Page 25] 7.14 Enforcement and Administration. THE PROVISIONS OF THIS ASBESTOS PI TRUST AGREEMENT AND THE ANNEXES HERETO SHALL BE ENFORCED BY THE BANKRUPTCY COURT PURSUANT TO THE PLAN. THE PARTIES HEREBY FURTHER ACKNOWLEDGE AND AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE SETTLEMENT OF THE ACCOUNTS OF THE TRUSTEES.

➢ [Exhibit D, Page 25, M] Retention of Jurisdiction: PURSUANT TO SECTIONS 105(A) AND 1142 OF THE BANKRUPTCY CODE, THIS COURT SHALL RETAIN AND SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY MATTER (A) ARISING UNDER THE BANKRUPTCY CODE, (B) ARISING IN OR RELATED TO THE REORGANIZATION CASES OR THE PLAN FOR WHICH THE REFERENCE HAS NOT BEEN WITHDRAWN TO THE DISTRICT COURT, OR (C) THAT RELATES TO ANY OF THE MATTERS SET FORTH IN ARTICLES 13.1, 13.2, AND 13.3 OF THE PLAN.

➢ [Exhibit E Page 2], 1.4 Acceptance of Assets and Assumption of Liabilities (f): NOTHING IN THIS ASBESTOS PI TRUST AGREEMENT SHALL BE CONSTRUED IN ANY WAY TO LIMIT THE SCOPE, ENFORCEABILITY, OR EFFECTIVENESS OF

THE INJUNCTIONS ISSUED IN CONNECTION WITH THE PLAN OR THE ASBESTOS PI TRUST'S ASSUMPTION OF ALL LIABILITY WITH RESPECT TO ASBESTOS UNSECURED PI TRUST CLAIMS.

➤ [Exhibit E Page 4], (vii) WITHOUT LIMITING THE GENERALITY OF ARTICLE 2.1(A) ABOVE, AND EXCEPT AS LIMITED BELOW, THE TRUSTEES SHALL HAVE THE POWER TO: …(VII) SUE AND BE SUED AND PARTICIPATE, AS A PARTY OR OTHERWISE, IN ANY JUDICIAL, ADMINISTRATIVE, ARBITRATIVE, OR OTHER PROCEEDING .….

## 2.   Claims Against Defendant Allen, As An Arbitrator Based on Arbitrator Immunity, Versus, As An Arbitrator Based on Violation of DII Trust ADR

Arbitrator Douglas C. Allen has personal immunity under Section 14(c), included to insure that, if an arbitrator fails to make a disclosure required by section 12, then the typical remedy is vacatur under section 23 and not loss of arbitral immunity under section 14, but not under the Trust ADR. As an "experienced Arbitrator", he did not follow the DII TDP and ADR procedures in reference to his "roles and responsibilities". Defendant Douglas C. Allen did not act in "good faith" or in "the best interest of the holder (Plaintiff) of an Asbestos Unsecured PI Trust Claim whom the additional indemnities represent". Defendant did not disclose to the Coordinator, for claimant's approval, his affiliations with Eric D. Green. Plaintiff was not aware, at the time of the nonbinding arbitration, (located at Resolutions, LLC in Boston, Massachusetts), that Eric D. Green, Legal Representative of the DII Trust [Exhibit 12], is also the co-founder and principal of Resolutions, LLC, who is affiliated with the defendant Douglas C. Allen, the solo practitioner [Exhibit 15]. The Arbitrator, Executive Director and DII counsel, left the arbitration room together during the hearing, leaving plaintiff with her son and their friend alone in the room.   Plaintiff's valid unsecured asbestos personal injury claim was outright denied instead of categorized, which is in non-compliance of the TDP and ADR procedures, causing loss of damages to the plaintiff. The Boston arbitration hearing was costly to both the plaintiff, and the Trust and its beneficiaries.

➤        [Exhibit 9], Page 15 K ARBITRATORS OR PRO BONO EVALUATORS WHO SERVE PURSUANT TO THESE RULES SHALL HAVE THE SAME IMMUNITY AS JUDGES FOR THEIR OFFICIAL ACTS.

➤ [DII Trust Alternative Dispute Resolution (ADR) Procedures, [Exhibit 9, page 8]: ANY APPOINTED ARBITRATOR SHALL DISCLOSE TO THE PRIVATE ADJUDICATION COORDINATOR ANY CIRCUMSTANCES LIKELY TO AFFECT IMPARTIALITY, INCLUDING ANY BIAS OR ANY FINANCIAL OR PERSONAL INTEREST IN THE RESULT OF THE ARBITRATION OR ANY PAST OR PRESENT RELATIONSHIP WITH THE PARTIES OR REPRESENTATIVES. UPON RECEIPT OF SUCH INFORMATION FROM THE ARBITRATOR OR ANOTHER SOURCE, THE PRIVATE ADJUDICATION COORDINATOR SHALL COMMUNICATE THE INFORMATION TO THE PARTIES AND, IF THE ADMINISTRATOR DEEMS NECESSARY, TO THE ARBITRATOR AND OTHERS. UPON OBJECTION OF A PARTY TO THE CONTINUED SERVICE, THE PRIVATE ADJUDICATION COORDINATOR SHALL DETERMINE WHETHER THE ARBITRATOR SHOULD BE DISQUALIFIED AND SHALL INFORM THE PARTIES OF THE DECISION, WHICH SHALL BE FINAL.

❖ Plaintiff did not receive an Arbitrator's Disclosure Statement per QUALIFICATION OF ARBITRATORS 4 AM JUR 2D. ALTERNATIVE DISPUTE RESOLUTION §§ 154 ET SEQ.

The Arbitrator did not serve pursuant to the rules of the TDP/ADR procedures or keep in mind the goals of an expeditious disposition of the arbitration proceeding, less costly, and efficient procedure. RUAA Section 17.

## B. The Complaint Does State Legally Recognizable Causes of Action

## 1. Plaintiff's Claim of Violation of 11 U.S.C. § 524

The District Court rules that the Asbestos PI Channeling Injunction and the establishment of the Asbestos PI Trust, comply with Section 524(e), and is consistent with Sections 524(g) and 1129, and other applicable provisions of the Bankruptcy Code. The Trustee of the Trust (the "Trustee") shall implement and administer this TDP in accordance with the Trust Agreement. Pursuant to Section 1129(a)(2), the Company complies with all of the applicable provisions of the Bankruptcy Code in that, among others: The Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan's discharge, exculpation and indemnification provisions have been agreed to in good faith and are consistent with Sections 105 and 1129. Thus, the Company complies with the "good faith and not by any means forbidden by law" requirement of Section 1129(a)(3). The Plan satisfies the "best interests" test as to all impaired classes of Claims and

Equity Interests in accordance with Section 1129(a)(7) or the Asbestos PI Trust's assumption of all liability with respect to Asbestos Unsecured PI Trust Claims. The defendants did not comply with the plaintiff's valid unsecured asbestos PI liability tort claim.

❖ BANKRUPTCY CODE 11 U.S.C. §524(G)(2)(B)(II)(V) THAT GOVERNS MASS TORT ASBESTOS BANKRUPTCY CASES THAT THEY MUST ESTABLISH SPECIFIC PROCEDURES APPROVED BY THE BANKRUPTCY COURT, THAT THE NEW TRUST MUST FOLLOW IN DISTRIBUTION OF FUNDS TO CLAIMANTS SEEKING RECOVERY FOR DAMAGES ALLEGEDLY CAUSED BY THE PRESENCE OF, OR EXPOSURE TO, ASBESTOS OR ASBESTOS-CONTAINING PRODUCTS.

➢ Exhibit A Page 1, 2.1. THE GOAL OF THE ASBESTOS PI TRUST IS TO TREAT ALL CLAIMANTS EQUITABLY AND IN ACCORDANCE WITH THE REQUIREMENTS OF SECTION 524(G) OF THE BANKRUPTCY CODE. THIS ASBESTOS TDP FURTHERS THAT GOAL BY SETTING FORTH PROCEDURES FOR PROCESSING AND PAYING CLAIMS GENERALLY ON AN IMPARTIAL FIRST-IN-FIRST-OUT ("FIFO") BASIS, WITH THE INTENTION OF PAYING ALL CLAIMANTS OVER TIME AS EQUIVALENT A SHARE AS POSSIBLE OF THE VALUE OF THEIR CLAIMS BASED ON HISTORICAL VALUES FOR SUBSTANTIALLY SIMILAR CLIAMS IN THE TORT SYSTEM.

➢ Exhibit E Page 3, 2.1 (a). THE TRUSTEES ARE, AND SHALL ACT AS, FIDUCIARIES TO THE ASBESTOS PI TRUST IN ACCORDANCE WITH THE PROVISIONS OF THIS ASBESTOS PI TRUST AGREEMENT AND THE PLAN. THE TRUSTEES SHALL, ALL TIMES, ADMINISTER THE ASBESTOS PI TRUST AND THE ASBESTOS PI TRUST ASSETS IN ACCORDANCE WITH ARTICLE 1.2 (SEE AGREEMENT OF TRUST, PURPOSE, TO COMPLY IN ALL RESPECTS WITH THE REQUIREMENTS OF A TRUST SET FORTH IN SECTION 524(G)(2)(B)(I) OF THE BANKRUPTCY CODE, [Exhibit E, page 2] OF THIS ASBESTOS PI TRUST AGREEMENT).

## 2. Plaintiff's Claim for "Unfair Practices"

Is it fair to not follow the TDP and ADR procedures? Is it fair to designate a claim a mesothelioma, at one Trust, and deny it at another Trust, in the same professional capacity, within the same requirements by the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Plan")? Is it fair to not disclose a conflict of interest? Is it fair to hire an outside law firm to process a pro se's claim, when

that is the defendants' job? Is it fair that the pro se had to hire an attorney to send a rejection letter because plaintiff's first rejection letter was ignored? Is it fair to go to Boston for a hearing when the other Trusts request written submission only, and the trip is so costly to the Trust and to the claimant? Is it fair when the claimant qualifies to be categorized and the Trust does not categorize the claim? Is it fair when a claimant requests several times to go before the Extraordinary Claims Panel and was denied even though the claim qualifies, and all decision are final and not subject to any further administrative or judicial review? Is it fair that the Trust does not get the consent of the Asbestos TAC and the Legal Representative and goes directly to the Extraordinary Claims Panel in direct non-compliance of procedure? Is it fair to ignore the questions of a claimant to a Trust organization that is supposed to specialize in the processing of asbestos claims? Is it fair when the Trust does not exhaust all administrative remedies for the claimant's valid unsecured asbestos personal injury liability tort claim and the claimant is forced to file suit? I don't think so.

Defendants noted that the H.K. Porter Trust is based on a different TDP than the DII Trust. Both Trusts are confirmed by the order of the United States District Court for the Western District of Pennsylvania. The words may differ in the Trust Distribution Procedures but the proof of claim and TDP requirements are in compliance with the Asbestos Trust Agreement, issued by the Bankruptcy Court [Exhibit 21]. Defendant Mark M. Gleason, the H.K. Porter Trustee, offered plaintiff's claim the maximum award for an allowed claim of $40,000 for a mesothelioma, based on the H.K. Porter medical standard: "MEDICAL REPORT FROM A QUALIFIED PHYSICIAN WHO HAS ACTUALLY EXAMINED THE CLAIMANT THAT CONTAINS A DIAGNOSIS OF ASBESTOS RELATED INJURY. THIS PROOF OF DISEASE MAY, IN THE TRUSTEE'S DISCRETION, BE SATISFIED BY MEDICAL REPORTS ACCEPTED BY ANOTHER ASBESTOS CLAIMS RESOLUTION FACILITY. … MEDICAL EVIDENCE SUBMITTED COMPLIES WITH RECOGNIZED MEDICAL STANDARDS REGARDING EQUIPMENT, TESTING METHODS AND PROCEDURES TO ASSURE THAT SUCH EVIDENCE IS RELIABLE. Plaintiff agrees that the Trust's obligations regarding the plaintiff's claim should be dictated by the undisputed terms of the TDP. Which it was not. It is suggested that plaintiff needs to show consumer-oriented conduct to demonstrate that the acts or practices [complained of] have a broader impact on consumers at large. Plaintiff

has noted [Exhibit 1, December 3, 2007] that plaintiff's claim is the first to go to arbitration and to a hearing in Boston.   The plaintiff is one of a 'class' with 'ramifications for the public at large". The plaintiff is not the only party truly affected by the alleged misrepresentation, as plaintiff's case will set a 'procedural' precedent for present and future claimants of the DII Trust, as well. Plaintiff is more than certain that there will never be another case as Mr. Palermo's, with such unprotected high asbestos exposure, as when he spray coated Quonset Huts and handled asbestos in shipbuilding and airplanes, during wartime and died at age 51.

➢   [Exhibit A, page 33, 7.6] ANY LAWSUIT MUST BE FILED BY THE CLAIMANT IN HER OR HER OWN RIGHT AND NAME AND NOT AS A MEMBER OR REPRESENTATIVE OF A CLASS.

### 3.  Plaintiff's Asserts a Claim for Breach of Fiduciary Duty

Fiduciary is a person that assumes a special relationship of trust, confidence and responsibility for obligations to others. Executors, administrators and trustees are examples of those who have a fiduciary responsibility to beneficiaries.  The adopted view that the trustee representing itself as being possessed of greater knowledge and skill than the ordinary man is under a duty to exercise a skill greater than that of an ordinary prudent man. The failure to exercise the required degree of care and prudence, and the like, thus the beneficiary of a Trust may properly raise an issue as to the Trustee's neglect of duty or failure to properly perform.

➢   [Exhibit E Page 4 (x)] TRUSTEES APPOINT SUCH OFFICERS, HIRE SUCH EMPLOYEES, AND ENGAGE SUCH LEGAL, FINANCIAL, ACCOUNTING, INVESTMENT, AUDITING, FORECASTING, AND OTHER CONSULTANTS, ALTERNATIVE DISPUTE RESOLUTION PANELISTS, OR AGENTS AS THE BUSINESS OF THE ASBESTOS PI TRUST REQUIRES, AND DELEGATE TO SUCH PERSONS SUCH POWERS AND AUTHORITITES AS THE FIDUCIARY DUTIES OF THE TRUSTEES PERMIT AND AS THE TRUSTEES, IN THEIR DISCRETION, DEEM ADVISABLE OR NECESSARY IN ORDER TO CARRY OUT THE TERMS OF THIS ASBESTOS PI TRUST AGREEMENT.

The defendants ignored and did not administer plaintiff's claim in compliance with the TDP, ADR, and matters of fact, and breached that faith plaintiff had in the roles and responsibilities of the Trust and its Trustee, Executive Director, Arbitrator and all its administrators.  In addition, defendants did not maximize the value

available for distribution to beneficiary claims.  The plaintiff's "Pro Se Claim" required many attorneys, both within and outside the Trust. The plaintiff had to hire an attorney herself to submit a rejection letter because plaintiff's first rejection letter was ignored.  The non-binding arbitration trip to Boston, Massachusetts was both inconvenient and costly to the plaintiff and to the Trust and its beneficiaries.

## 4.  Plaintiff's Claim "Not Following Trust Distribution Procedures" (TDP)

Plaintiff's claim was not processed per the TDP/ADR.  Just because the Pro Bono Evaluator and Arbitrator reviewed the plaintiff's claim does not mean that plaintiff's claim exhausted all administrative remedies. Plaintiff's claim was not categorized, presented before the DII Extraordinary Claims Panel and not valued. Plaintiff was not notified of any conflicts of interest, and when the plaintiff documented issues of the Trust's non-compliance of the TDP and ADR directly to the Trustee and Executive Director of the Trust, plaintiff did not receive direct answers.  The Plaintiff requested the consent of the Asbestos TAC and the Legal Representative for her claim to be submitted to an Extraordinary Claims Panel but her request went unanswered. Instead, the defendants went directly to the Extraordinary Claims Panel in non-compliance of TDP/ADR procedures.

➢ [See [Exhibit A, p. 28] 5.10 (a) Establishment of Alternative Dispute Resolution Procedures: ASBESTOS PI TRUST, WITH THE CONSENT OF THE ASBESTOS TAC AND THE LEGAL REPRESENTATIVE, SHALL INSTITUTE BINDING AND NONBINDING ARBITRATION PROCEDURES IN ACCORDANCE WITH THE ALTERNATIVE DISPUTE RESOLUTION ("ADR") PROCEDURES INCLUDED IN ATTACHMENT A HERETO TO ATTEMPT TO RESOLVE WHETHER THE ASBESTOS PI TRUST'S OUTRIGHT REJECTION OR DENIAL OF A CLAIM WAS PROPER OR WHETHER THE CLAIMANT'S MEDICAL CONDITION OR EXPOSURE HISTORY MEETS THE REQUIREMENTS OF THIS TDP FOR PURPOSES OF CATEGORIZING A CLAIM INVOLVING DISEASE LEVELS I-VIII.

➢ See Exhibit A, p. 21, Section 2, 5.4(a)]:  ANY DISPUTE AS TO EXTRAORDINARY CLAIM STATUS SHALL BE SUBMITTED TO A SPECIAL EXTRAORDINARY CLAIMS PANEL ESTABLISHED BY THE ASBESTOS PI TRUST WITH THE CONSENT OF THE ASBESTOS TAC AND THE LEGAL REPRESENTATIVE.

➢ Plaintiff's claim qualifies pursuant to Section 5.4(a)(1) 'Extraordinary Claims' means an Asbestos Unsecured PI Trust Claim that otherwise satisfies the Medical Criteria and must fulfill *one of two* stipulations. Claim *fits both* (i) and (ii) qualifying factors.    Plaintiff's claim is an Extraordinary Claim because Angelo Palermo's exposure to asbestos occurred (i) PRIMARILY AS A RESULT OF WORKING IN MANUFACTURING FACILITIES OF ONE OR MORE FACILITIES OF ONE OR MORE HALLIBURTON ENTITIES OR HARBISON-WALKER ENTITIES WHERE MANUFACTURING OF ASBESTOS-CONTAINING PRODUCTS AT THEIR FACILITY, AND THE CLAIM IS A TORT CLAIM THAT IS NOT OTHERWISE BARRED BY A STATUTORY WORKER'S COMPENSATION PROGRAM. The Social Security records listed the facilities, entities, and timeframe, and the Trust *qualified* Plaintiff's claim for Occupational and Company Exposure. (ii) The second part is where Angelo Palermo EXPERIENCED AT LEAST 75% THE RESULT OF EXPOSURE DIRECTLY LINKED BY CREDIBLE EVIDENCE TO HALILIBURTON OR HARBISON-WALKER PRODUCTS, AND THAT THERE IS LITTLE LIKELIHOOD OF A SUBSTANTIAL RECOVERY ELSEWHERE AND HIS ECONOMIC DAMAGES ARE EXCEPTIONALLY LARGER THAN THE NORMAL RANGE.

Angelo Palermo experienced high asbestos exposure, for 29 years from 1937-1966, as a Union Insulation Mason, working for companies affiliated with this DII Trust. Specifically, Angelo Palermo worked from 1941-1945, for Symington Gould later renamed Symington Wayne, a direct Subsidiary or "Entity" of Halliburton. Plaintiff wrote "A109" on the Claim Form [Exhibit 2]. See [Exhibit 3, "A" Entity List, A109 Symington Wayne]. Also noted that he worked directly for Johns-Manville (largest asbestos company in the world), City of Albany (high asbestos exposure site), etc., and listed on the Claim Form as B2434, B2435, B2436, B2437 and B4247, in addition to, an Affidavit within the claim package. The Plaintiff made the Trust, Executive Director and Trustee aware, with documented evidence, of her prior trust claim with the Manville Trust, the model for all asbestos Trusts, to the proper procedure [Exhibit 1, December 3, 2007] for plaintiff's valid DII asbestos unsecured personal injury claim, so as to be categorized, reviewed by the DII Extraordinary Claims Panel, and then to value arbitration.

## C. <u>Plaintiff Stated A Cognizable Claim, Not Barred</u>

Plaintiff's suit 'asbestos personal injury liability tort claim' qualifies under Individually Reviewed (Exceptional Claim) Process TDP/ADR, accepting alternative proof of medical diagnosis (Federal Rule of Evidence 702, Testimony By Experts) within the Discovery Rule and a stay that tolled the statute of limitations, after proving, without a doubt, asbestos exposure to Halliburton and Harbison-Walker company worksites and company asbestos products exposure. In addition to, a legal claim of' 'breach of contract' by the Trust, Trustee, Executive Director and Arbitrator, is not barred.

➢ [Exhibit 9], ADR Page 2: Showing Required: AS SET FORTH IN THE TDP, IN ORDER TO <u>ESTABLISH A VALID</u> <u>ASBESTOS UNSECURED PI TRUST CLAIM,</u> A CLAIMANT MUST MAKE A DEMONSTRATION OF EXPOSURE TO ASBESTOS-CONTAINING PRODUCTS FOR WHICH ONE OR MORE OF THE HALLIBURTON ENTITIES AND/OR THE HARBISON-WALKER ENTITIES BEARS LEGAL RESPONSIBILITY.

## 1. <u>Plaintiff's Claim is Within the Statute of Limitations</u>

Angelo Palermo died on April 23, 1966 and his death certificate states that the immediate cause was acute liver failure due to metastasis cancer due to primary stomach (place of origin). It was not until <u>June 6, 2003</u> that a tribunal of asbestos experts, the Extraordinary Claims Panel of the Manville Trust, not Dr. W. Beckett, designated Angelo Palermo's death asbestos related. On October 27, 2003, David Austern, President of the Manville Trust, confirmed Plaintiff's claim as an 'Extraordinary Mesothelioma' and issued a check for financial restitution. Using the Discovery Rule (documented in great detail in Plaintiff's Nonbinding Arbitration 2007, and Supplement submissions, Exhibit 1), on <u>April 5, 2006,</u> plaintiff filed a claim with the DII Trust and plaintiff relies upon plain language that this complies with the 3-year requirement under New York Statute for the filing of a lawsuit upon diagnosis of an asbestos-related disease. <u>Note: The U.S. Bankruptcy Court tolled the Statute of Limitation from February 15, 2002 until November 9, 2005 when the DII Trust was established</u>.

## 2. <u>Plaintiff's Claim has Sufficient Medical Diagnosis</u>

Qualified for the Individually Review Claim Process 5.3(b)(1) [Exhibit A - Page 17]. Note: <u>Trust Underlined</u>.

➢ SUBJECT TO THE PROVISIONS SET FORTH BELOW, AN ASBESTOS PI TRUST CLAIMANT MAY ELECT TO HAVE HIS OR HER ASBESTOS UNSECURED PI TRUST CLAIM REVIEWED FOR PURPOSES OF DETERMINING WHETHER THE CLAIM WOULD BE COMPENSABLE IN THE TORT SYSTEM EVEN THOUGH IT DOES NOT MEET THE PRESUMPTIVE MEDICAL/EXPOSURE CRITERIA FOR ANY OF THE DISEASE LEVELS SET FORTH IN SECTION 5.3(A)(3) ABOVE. IN ADDITION, OR ALTERNATIVELY, AN ASBESTOS PI TRUST CLAIMANT MAY ELECT TO HAVE A CLAIM UNDERGO THE INDIVIDUAL REVIEW PROCESS FOR PURPOSES OF DETERMININGG WHETHER THE LIQUIDATED VALUE OF THE CLAIM EXCEEDS THE SCHEDULED VALUE FOR THE RELEVANT DISEASE LEVEL ALSO SET FORTH IN SAID PROVISION.

Even with Angelo Palermo's work experience and all the symptoms of mesothelioma [Medical Summary Exhibit 18], the inexperienced resident doctor, who attended him and later became a plastic surgeon (received his license 2 ½ years after Mr. Palermo's death), did not give the right diagnosis.

▪ [Exhibit 19, Page 4] The Trust states: "*The Claimant asserts that the doctor who signed the death certificate was inexperienced and that the diagnosis of mesothelioma was not common in 1966. Although this may be true, there is no basis to ignore the specific mandates of the TDP.* TDP Exceptional Claim Processing.

▪ Dr. William Beckett, a local Occupational Doctor, specializing in Pulmonary (lungs) and toxic substance diseases evaluated decedent's medical, work history and pictures of his digital clubbing (indicative of impaired blood oxygenation resulting from advanced lung scarring) [Exhibit18], and [Exhibit B] stated: "*Peritoneal mesothelioma is a difficult diagnosis to distinguish from carcinoma metastatic to the abdominal cavity or primary to the stomach, and it seems quite possible that the patient's fatal malignancy could have been a diffuse malignant mesothelioma of the peritoneum rather than a primary from the stomach. There certainly a suggestion in the photograph that he had digital clubbing, but I cannot make out from the photograph whether this was present or not. This is a relevant issue because patients with malignant mesothelioma can develop digital clubbing.*"    Note: The doctor reviewed a not clear black and white photograph.

- U.S. V. COLLINS, M.D.PA. 1975, 395 F. SUPP 629 TEST OF COMPETENCY OF PROFFERED EXPERT TESTIMONY IS WHETHER THE WITNESS HAS SUCH SKILL, KNOWLEDGE OR EXPERIENCE IN THAT FIELD OR CALLING AS TO MAKE IT APPEAR THAT HIS OPINION OR INFERENCE WILL PROBABLY AID THE TRIER IN HIS SEARCH FOR TRUTH.

❖ GRIMES V. HOFFMANN-LAROCHE, INC. D.N.H. 1995, 907 F. SUPP.33. EXPERT SCIENTIFIC TESTIMONY MUST SATISFY THREE REQUIREMENTS IN ORDER TO BE ADMISSIBLE: FIRST, EXPERT MUST BE QUALIFIED; SECOND, EXPERT'S TESTIMONY MUST BE RELIABLE AND THIRD, EVIDENCE MUST "FIT" FACTS OF CASE. FEDERAL RULE 702 IS BROADLY PHRASED. THE FIELDS OF KNOWLEDGE, WHICH, MAY BE DRAWN UPON, ARE NOT LIMITED MERELY TO THE "SCIENTIFIC" AND "TECHNICAL" BUT EXTEND TO ALL "SPECIALIZED" KNOWLEDGE. SIMILARLY, THE EXPERT IS VIEWED, NOT IN A NARROW SENSE, BUT AS A PERSON QUALIFIED BY "KNOWLEDGE, SKILL, EXPERIENCE, TRAINING, OR EDUCATION." THUS, WITHIN THE SCOPE OF THE RULE, ARE NOT ONLY EXPERTS IN THE STRICTEST SENSE OF THE WORD, E.G., PHYSICIANS, PHYSICISTS, AND ARCHITECTS, BUT ALSO THE LARGE GROUP SOMETIMES CALLED "SKILLED" WITNESSES.

The Johns-Manville and Celotex Extraordinary Claims Panels of experts diagnosed Angelo Palermo's cause of death as an asbestos related mesothelioma and presented the plaintiff's family with a settlement. Qualified under Exceptional Medical Claims S.758 Sec. 205. All three members of the Johns-Manville Extraordinary Claims Panel testified before the United States Judiciary Committee on the Fairness in Asbestos Injury Resolution Act of 2003 as experts. [See Panel's qualifications in Exhibit 1, Arbitration 2007 and Supplement].

➢ [Exhibit A page 25 TDP] Credibility of Medical Evidence: MEDICAL EVIDENCE (I) THAT IS A KIND SHOWN TO HAVE BEEN RECEIVED IN EVIDENCE BY A STATE OR FEDERAL JUDGE AT TRIAL....

Note: Elihu Inselbuch, Manville/Celotex Extraordinary Claims Panel member, was also a member of the informal asbestos claimants committee of the Halliburton prepackaged Chapter 11 Bankruptcy [Exhibit 20]. The Plaintiff could not meet the medical criteria of any of the TDP's, of Manville, Celotex, Eagle-Picher, H.K. Porter and DII BUT she did provide credible scientific, legal and medical evidence, within the Individually Reviewed (Exceptional Claim) Process of each Trust, and met the medical standard of a 'mesothelioma' claim and 'extraordinary' for two Trusts. See Exhibit A Pages 15 & 25, and Exhibit 21 for comparisons of criteria.

- Plaintiff would like to address Defendant's comment: *"Plaintiff later appealed Manville's decision to an extraordinary claims panel and received a small payment"*. On ~~February 22, 2005~~ June 6, 2003, the Manville Award [Exhibit 1, December 3, 2007] also stated: *"On the other hand, there was extensive pain and suffering in this case, and early death, and abundant and apparent exposure to asbestos. In the totality of the circumstances, the Panel believes this claim deserves extraordinary consideration."*

The Manville Extraordinary Claims Panel issued a gross settlement of $\underline{750,000}$ [Exhibits 1, December 3, 2007]. Plaintiff's claim was 1 of 12 'extraordinary claims' of a total of 650,000+ claims by 2003, and the 2nd highest gross settlement value issued by the Manville Trust. The average Manville settlement was $\underline{2500}$ and the plaintiff received $\underline{75,000}$, The United States Judiciary Committee on Fairness in Asbestos Injury Resolution Act of 2005 increased a mesothelioma claim from $750,000 to $1,100,000. <u>Note</u>: The DII Trust pays 100% settlement value. Celotex Trust issued the plaintiff the highest gross settlement ever paid by their Trust, $353,983 ($40,000); and Eagle-Picher, without an Extraordinary Claims Panel, made a gross settlement of $65,000 ($16,426). Defendant Trustee Mark M. Gleason, as Trustee of the H.K. Porter Trust, offered plaintiff $40,000 for a mesothelioma claim. See Trust's submission to Pro Bono [Exhibit 19, Page 9]: "*<u>The Trustees of this Trust take their charge to pay deserving claimants extremely seriously</u>.*"

❖ BY AGREEING TO A SETTLEMENT, EACH PARTY ACKNOWLEDGES THAT THERE IS NO LONGER ANY "DISPUTE AS TO EITHER [THE] VALIDITY OF THE CLAIM OR ITS AMOUNT," THEREBY TAKING THE MATTER OUTSIDE THE SCOPE OF EXCLUDABLE EVIDENCE. FED. R. EVID. 408; *SEE* § 22:24.

The settlements do seem "small" when a DII TAC member, Perry Weitz, can get his clients settlements of $40,000,000+. Angelo Palermo's was 51-years old, exposed to excessive amounts of asbestos, experienced so much pain and suffering, went for unnecessary surgery and then died; leaving 4 dependants devastated.

➢ [Exhibit A, page 28, DII TDP]: WITH RESPECT TO ALL CLAIMS ELIGIBLE FOR ARBITRATION, THE CLAIMANT, BUT NOT THE ASBESTOS PI TRUST, MAY ELECT EITHER NONBINDING OR BINDING ARBITRATION. THE ADR PROCEDURES SET FORTH IN ATTACHMENT A HERETO MAY BE MODIFIED BY THE ASBESTOS PI TRUST WITH THE CONSENT OF THE

ASBESTOS TAC AND THE LEGAL REPRESENTATIVE.  SUCH AMENDMENTS MAY ALSO INCLUDE ADOPTION OF MEDIATION PROCEDURES AS WELL AS ESTABLISHMENT OF AN EXTRAORDINARY CLAIMS PANEL TO REVIEW SUCH CLAIMS PURSUANT TO SECTION 5.4(A) ABOVE.

➢ Defendants' Motion To Dismiss, Page 6:  *"All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review."* (emphasis added)  Plaintiff's claim failed to meet any of these prerequisites and therefore was denied extraordinary claims status.  This denial was considered and affirmed by the Trust's Extraordinary Claims Panel.  See Plaintiff's Complaint Exhibit 1, January 7, 2008 Letter from Trust to Joseph Taddeo".

Note:  A disputed claim needs the Asbestos TAC and the Legal Representative's consent, **NOT** the Trust's Extraordinary Claims Panel's consideration and affirmation, as it is a formal Arbitration Process.

➢ [Exhibit 9 page 14], C:  THERE SHALL BE NO EX PARTE COMMUNICATION BETWEEN THE ARBITRATOR OR PRO BONO EVALUATOR AND ANY COUNSEL OR PARTY IN ANY MATTER.

➢ [Exhibit C, 4th page] Plaintiff questions the knowledge of the Pro Bono Evaluator, as per her comment: *"A comparison between Mr. Palermo's trade as a mason, and the companies for whom he worked, in light of the products for which this Trust is responsible, further supports the conclusion that it is highly unlikely there could be evidence of very substantial "company exposure" in this case."*

❖ U.S. v. SCAVO, C.A.8 (MINN.) 1975, 593 F 2D837. NOT ALL EXPERT TESTIMONY IS ADMISSIBLE UNDER RULE 704 OF THESE RULES, BUT, RATHER, EXPERT TESTIMONY MUST STILL MEET CRITERION OF HELPFULNESS EXPRESSED IN THIS RULE AND IS SUBJECT TO EXCLUSION IF ITS PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY RISKS OF UNFAIR PREJUDICE, CONFUSION OR WASTE OF TIME.

## V. ARGUMENT AND AUTHORITIES AGAINST A MORE DEFINITE STATEMENT

Plaintiff's claim is not vague or ambiguous as it was possible for the defendants to frame a response.

## VI. CONCLUSION

Plaintiff, Gail Garner, daughter, pro se representative for the Estate of Angelo Palermo, went through the DII Trust process in good faith to make a claim for her father's tragic and early death at 51 years old caused by asbestos contracted in the course of employment due to misconduct and negligence. Entities of Halliburton and Harbison-Walker and their predecessors willfully concealed their knowledge of the hazards of asbestos and failed to provide protective equipment and falsely advised Mr. Palermo that it was safe to work in asbestos-contaminated areas. Angelo Palermo's work record shows he was exposed to high concentrations of asbestos for 29 years from 1937-1966, in the construction asbestos industry as a Union Insulation Mason, and specifically, worked from 1941-1945, for Symington Gould later renamed Symington Wayne, a direct Subsidiary or "Entity" of Halliburton and Harbison-Walker. Mr. Palermo handled and spray coated asbestos under the worst possible working conditions, and horrendous tortuous circumstances, beyond his control, without warning or protection, during an asbestos boom and at a time of no government regulations. Plaintiff established a legal claim of negligent failure to warn; strict product liability; breach of expressed and implied warranty; and several liability of the DII Trust's. asbestos-containing product. An intentional tort was committed that caused the death of Angelo Palermo. We presented credible scientific medical evidence, consistent with recognized Trust standards, and confirmed by competent asbestos experts recognized by all asbestos Trusts, under Federal Rule of Evidence 702, Testimony by Experts. The Manville and Celotex Extraordinary Claims Panels unanimously determined Angelo Palermo's death as an asbestos-related disease of mesothelioma. By precedent, a total of four Trusts have designated plaintiff's claim a mesothelioma, including the H. K. Porter Trust, by defendant Trustee Mark M. Gleason, under Chapter 11 U.S.C § 524(g). The DII Trust is not disputing liability as to company exposure and as a valid unsecured claim. The processing of plaintiff's claim did not exhaust all administrative remedies. The Trust did not follow the procedures of notifying claimant of any conflicts, asking if she accepts, categorizing her claim, getting the proper consent and allowing her to go before the Extraordinary Claims Panel for review, and valuing Claimant's claim. Plaintiff

notified the Trust, at the time of the occurrence, that the Trust denied her a fair review. The defendants hired an outside law firm to process the 'pro se' claim.  The goal of the Trust is to prevent the impact of lawsuits against the debtor's fresh start but the defendants encouraged litigation in the court.  Why would the defendants not want the plaintiff's claim to go before the Extraordinary Claims Panel, since there would be no further administrative or judicial review?  Maybe, because the DII Trust pays 100% of the gross settlement value and the plaintiff's claim already went before two other Extraordinary Claims Panels and was granted 'extraordinary status' and offered a high gross settlement value times, the pro rata amount.   Defendants admit that there was Ex Parte communications with the DII Extraordinary Claims Panel, as they did not get the consent of the Asbestos TAC or the Legal Representative. The plaintiff alleges bad faith and willful misconduct in not fulfilling defendants' official duties and responsibilities in the processing of plaintiff's asbestos PI claim. The plaintiff pro se filed a legal binding contract with the DII Trust, the Claim Form and the Nonbinding Arbitration Form, and she did everything required of the claimant, when the defendants failed to perform as required by the TDP and ADR, which led to a denial of a recovery of damages.  The Trust arose out of the Plan of Reorganization filed and confirmed in the Chapter 11 Bankruptcy proceeding styled *In re:  Mid-valley, Inc., et al.,* Case No. 03-35592-JKF pursuant to Section 524(g) of the Bankruptcy Code to assume and pay all qualified asbestos claims, liabilities, and obligations of certain Halliburton and Harbison-Walker Entities. The plaintiff has a valid asbestos unsecured claim against the DII Trust and clearly showed on the face of the Complaint, filed on April 25, 2008, with attachments; defendants' Authorization To Commence Litigation of October 29, 2007, pursuant to section 7.6 of the Trust Distribution Procedures; Defendant's Response In Support of Plaintiff's Motion to Vacate the Conditional Transfer Order (CTO-309); the Defendants' Memorandum of Law In Support of Motion to Dismiss; and pursuant to Civil Rules of Procedure 12, that the plaintiff stated a claim upon which relief can be granted. The plaintiff requests defendant's Motion to Dismiss, vacated, as it is frivolous.    Respectfully submitted this _____ of September 2008.

_____     Gail Garner

notified the Trust, at the time of the occurrence, that the Trust denied her a fair review. The defendants hired an outside law firm to process the 'pro se' claim. The goal of the Trust is to prevent the impact of lawsuits against the debtor's fresh start but the defendants encouraged litigation in the court. Why would the defendants not want the plaintiff's claim to go before the Extraordinary Claims Panel, since there would be no further administrative or judicial review? Maybe, because the DII Trust pays 100% of the gross settlement value and the plaintiff's claim already went before two other Extraordinary Claims Panels and was granted 'extraordinary status' and offered a high gross settlement value times, the pro rata amount. Defendants admit that there was Ex Parte communications with the DII Extraordinary Claims Panel, as they did not get the consent of the Asbestos TAC or the Legal Representative. The plaintiff alleges bad faith and willful misconduct in not fulfilling defendants' official duties and responsibilities in the processing of plaintiff's asbestos PI claim. The plaintiff pro se filed a legal binding contract with the DII Trust, the Claim Form and the Nonbinding Arbitration Form, and she did everything required of the claimant, when the defendants failed to perform as required by the TDP and ADR, which led to a denial of a recovery of damages. The Trust arose out of the Plan of Reorganization filed and confirmed in the Chapter 11 Bankruptcy proceeding styled *In re: Mid-valley, Inc., et al.,* Case No. 03-35592-JKF pursuant to Section 524(g) of the Bankruptcy Code to assume and pay all qualified asbestos claims, liabilities, and obligations of certain Halliburton and Harbison-Walker Entities. The plaintiff has a valid asbestos unsecured claim against the DII Trust and clearly showed on the face of the Complaint, filed on April 25, 2008, with attachments; defendants' Authorization To Commence Litigation of October 29, 2007, pursuant to section 7.6 of the Trust Distribution Procedures; Defendant's Response In Support of Plaintiff's Motion to Vacate the Conditional Transfer Order (CTO-309); the Defendants' Memorandum of Law In Support of Motion to Dismiss; and pursuant to Civil Rules of Procedure 12(b)(6) that the plaintiff stated a claim upon which relief can be granted. The plaintiff requests defendant's Motion to Dismiss, vacated, as it is frivolous. Respectfully submitted this ___ of September 2008.

_____ Gail Garner

Gail Garner, Pro Se
983 Brown Road
Rochester, New York 14622
(585) 544-8678

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document, **PLAINTIFF'S AFFIDAVIT OF LAW IN SUPPORT OF PLAINTIFF'S MOTION OF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** was served upon counsel of record identified on this Proof of service, via U.S. Mail, at the following addresses:

Andrew L. Morrison (AM 1071)
K&L Gates, LLP
599 Lexington Avenue
New York, New York 10022

Beth W. Bivans (TX Bar 00797664)
1717 Main Street, Suite 2800
Dallas, Texas 75201

I further certify that on this date I filed the foregoing document with the Clerk of the United States District Court Western District of New York.

Dated this 20th day of September, 2008.

_____
Gail Garner, Pro Se
Representative of Estate of Angelo Palermo

# DII Industries, LLC Asbestos PI Trust



October 6, 2006

Ms. Gail Garner
983 Brown Road
Rochester, NY  14622

Re:   Injured Party: Angelo Palermo          RESPOND TO:  Mary Ellen Nickel
      Claim No.: 2001504                      mnickel@diiasbestostrust.org
      SSN: 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                        Phone:  (800)941-6889

Dear  Ms. Garner:

   As you are aware, the DII Industries, LLC Asbestos PI Trust ("DII Asbestos Trust") received your claim on behalf of the above-referenced Injured Party.  We have reviewed the documentation provided in your claim and are providing you with the results of that review.

   Evaluation of this claim based on the requirements of the Trust Distribution Procedures ("TDP") has determined that this claim fails to qualify for payment for the following reasons:

1. **Insufficient Medical Diagnosis:**  Section 5.7(a)(1)(B) of the TDP requires either (1) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease or (ii) a diagnosis of the malignant disease by a board-certified pathologist. You have not provided either of these documents in support of your claim. Additionally, the submitted report of Dr. Beckett does not provide an acceptable diagnosis for the alleged injury.. *See* paragraph five of Dr. Beckett's July 11, 2002 report where in he states, "it seems quite possible that the patient's fatal malignancy could have been a diffuse malignant mesothelioma of the peritoneum rather than a primary from the stomach."

2. **Statue of Limitations Violation:**  Based on our review of the applicable Statute of Limitations for the State of New York, the Trust has determined that this claim fails to meet the 3 year requirement under New York's Statute for the filing of a lawsuit upon diagnosis of an asbestos-related disease.

---

7557 Rambler, Suite 100          www.diiasbestostrust.org        Claims Processing Only
Dallas, TX  75231                (800) 941-6889 (Toll Free)       P.O. Box 393
(214) 271-0550 (Phone)                                           Wilmington, DE 19899-1036
(214) 271-0545 (Fax)                                            (866)642-3271 (Fax)

Ms. Gail Garner
October 6, 2006
Page 2 of 2

Finally, although you have requested that this claim be reviewed as an Extraordinary Claim, Section 5.4(a)(1) of the TDP only allows Extraordinary Review for claims that:

otherwise satisfies the Medical Criteria for Disease Levels II-VIII and that is held by a claimant whose exposure to asbestos (i) occurred primarily as a result of working in manufacturing facilities of one or more of the Halliburton Entities or the Harbison-Walker Entities or their predecessors during a period in which they were manufacturing asbestos-containing products at the facility, ..., or (ii) was at least 75% the result of Company Exposure as defined in Section 5.7(c) below, and there is little likelihood of a substantial recovery elsewhere.

Since the claim filed on behalf of Mr. Palermo fails to meet any of the foregoing requirements, this claim will not be reviewed as an Extraordinary Claim.

Based on this evaluation, the DII Asbestos Trust has **Disallowed** the claim and will be closing the file.

If you dispute the Trust's determination of this claim as set forth above, pursuant to Section 5.10(b) of the TDP, you, as the Official Representative of the Injured Party, must send the Trust a written request for Alternative Dispute Resolution ("ADR") pursuant to the Trust's procedures. To make such a written request, you can sign below and return this correspondence to:

Nancy Freeman
DII Asbestos Trust
7557 Rambler Road, Suite 100
Dallas, TX 75231

Upon receipt of the written request for ADR, the Trust shall send you an ADR packet. Should you have any further questions, please do not hesitate to contact me. Thank you.

Sincerely yours,

Mary Ellen Nickel
Director of Claims


Official Representative does NOT accept the determination and requests Alternative Dispute Resolution.

_____          _____
Official Representative                                    Date

**EXHIBIT 15**

### *ADRPAC*

*Detta D. Corona*

*4516 Lovers Lane, #236 - Dallas, TX 75225*
*214-528-3832 (Office)  *  214-549-1732 (Cell)  *  214-528-1313 (Fax)*
*detta@adrpac.com*

May 3, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Mrs. Gail Garner
983 Brown Road
Rochester, NY 14622

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Ms. Nancy E. Freeman
DII Industries, LLC Asbestos PI Trust
7557 Rambler, Suite 100
Dallas, TX 75231

RE:    ADR Proceedings – Non-Binding Arbitration
       Injured Party: Angelo Palermo;    Claim No: 2001504

Dear Mrs. Garner and Ms. Freeman:

In accordance with the DII Industries, LLC, Asbestos PI Trust Alternative Dispute Resolution Procedures, the Trust has elected to strike Ms. Mary Skelnik as a potential arbitrator in the above-referenced matter.  Please find below the remaining two (2) potential arbitrators for non-binding arbitration.

**MR. DOUGLAS C. ALLEN – East Montpelier, Vermont**

**MR. LAWRENCE FITZPATRICK – Lawrenceville, New Jersey**

Pursuant to the ADR Procedures, within seven (7) days of the receipt of this letter, the claimant may select and identify to the Private Adjudication Coordinator a second potential arbitrator to be stricken from the list.  Enclosed please find CV's for the remaining two arbitrators.

Yours truly,

Detta D. Corona
Private Adjudication Coordinator

/DDC

Enclosures



*Douglas Allen provides dispute management and resolution services to the legal and business communities for commercial matters and disputes involving science and technology and other cases having complex and technical information. Mr. Allen's background combines degrees in science and engineering, over twenty years of consulting and project management experience, and a thorough knowledge of and practical experience with alternative dispute resolution (ADR) processes including negotiation, mediation and arbitration, as well as with all phases of civil litigation. Mr. Allen has provided his services for both government and private sector clients.*

# DOUGLAS C. ALLEN, P.A.

### SERVICES[1]

- Project Management for Legal Disputes and Transactions
- Decision Analysis and Settlement Strategy
- Consulting for ADR and litigation
- Neutral Panelist for ADR

### CASE EXPERIENCE[1]

- Bankruptcy [524(g)]
- Class Action
- Computer/Internet
- Construction Claims
- Cost Allocation/Cost Recovery
- Environmental
- Insurance Recovery
- Intellectual Property
- Mass Torts
- Product Liability
- Professional Liability
- Telecommunications

### EDUCATION, CERTIFICATIONS & AFFILIATIONS

- Master of Engineering & Bachelor of Engineering, Dartmouth College (Hanover, NH)
- Bachelor of Arts in biological sciences, University of Vermont (Burlington, VT)
- Post-graduate courses in biomedical sciences, University of Vermont (Burlington, VT)
- Mediation Training, JAMS-Endispute (Boston, MA)
- Arbitration Training, American Bar Association (Chicago, IL)
- Nearly 200 hours of training, courses and workshops in mediation, arbitration and intellectual property-related topics
- Licensed Professional Engineer (Massachusetts, Vermont)
- Registered Patent Agent, U.S. Patent & Trademark Office
- Co-Mediator/Neutral Expert, Prof. Eric D. Green, RESOLUTIONS, LLC (Boston, MA)
- Neutral Panelist, U.S. District Court, District of Massachusetts
- Neutral Panelist, World Intellectual Property Organization (Geneva, Switzerland)
- Former Neutral Panelist, JAMS-Endispute (Boston, MA)
- Professional Memberships: International Institute for Conflict Prevention and Resolution (CPR); ABA Dispute Resolution, Science & Technology, and Intellectual Property sections; American Intellectual Property Law Assn (AIPLA)

### CONTACT INFORMATION

Address:    1457 Vermont Route 14N / East Montpelier, Vermont  05651
Telephone:  802.229.2129
Facsimile:  802.229.5030
Mobile:     617.510.4335
Email:      dallen@dcallenpa.com
Web:        www.dcallenpa.com

[1]Complete descriptions of services and case experience may be reviewed at the web site address above

Rev 03/2007 1

# LAWRENCE FITZPATRICK

14 Stonelea Drive, Princeton Junction, New Jersey 08550 • Phone: (609) 275-8840
1009 Lenox Drive, Bldg. 4, Suite 101, Lawrenceville, NJ 08648 • Phone: (609) 219-8862

## PROFESSIONAL EXPERIENCE

Positions Held Since January, 1999

*August, 1999 - Present*
SOLE TRUSTEE OF FIBREBOARD SETTLEMENT TRUST
Responsible for prudently investing a $1.8 billion Trust set up to pay Fibreboard's asbestos claimants and for approving all payments out of the Trust's funds.

*October, 2004 - Present*
SOLE TRUSTEE OF MIST-COIL TCE PI SETTLEMENT TRUST
Responsible for managing a multi-million dollar Trust established to compensate victims of TCE (trichloroethylene) exposure in two Chicago suburbs where the drinking water was contaminated by decades of spillage of TCE at a metal fabrication facility.

*February, 2001 - Present*
FUTURE CLAIM REPRESENTATIVE IN PITTSBURGH CORNING BANKRUPTCY
Appointed by the United States Bankruptcy Court for the Western District of Pennsylvania to represent the interests of claimants who have not yet manifested an asbestos-related disease but may do so in the future in a $3.0 billion plus bankruptcy.

*November, 2001 - Present*
EXECUTIVE DIRECTOR OF THE CENTER FOR CLAIMS RESOLUTION
Rehired by the CCR to help finalize settlements, litigate against surety bond companies and others, and provide testimony as required.

*December, 2002 - Present*
FUTURE CLAIM REPRESENTATIVE IN NARCO BANKRUPTCY
Appointed by the United States Bankruptcy Court for the Western District of Pennsylvania to represent the interests of claimants who have not yet manifested an asbestos-related disease but may do so in the future, in a $2 billion plus bankruptcy.

*February, 2003 - Present*
FUTURE CLAIM REPRESENTATIVE IN AC&S BANKRUPTCY
Appointed by the United States Bankruptcy Court for the District of Delaware to represent the interests of claimants who have not yet manifested an asbestos-related disease but may do so in the future.

*April, 2003 - Present*
FUTURE CLAIM REPRESENTATIVE IN A.P. GREEN BANKRUPTCY
Appointed by the United States Bankruptcy Court for the Western District of Pennsylvania to represent the interests of claimants who have not yet manifested an asbestos-related disease but may do so in the future.

# LAWRENCE FITZPATRICK – PAGE 2

October, 1988 – December, 1998
PRESIDENT AND CHIEF EXECUTIVE OFFICER
Center For Claims Resolution, Inc., Princeton, New Jersey
> The Center For Claims Resolution, Inc. (CCR) handled asbestos claims on behalf of its 20 member companies, their insurers and reinsurers. It also provided a variety of services (insurance billing, data processing, consulting, etc.) to select non-member companies. During my tenure at the CCR, it disposed of over 270,000 claims and billed, collected and dispersed over $2 billion in payments. It also closely controlled legal costs associated with processing claims through a computer-monitored case management system, utilization of salaried staff counsel to perform functions normally done by outside lawyers, captive CCR law offices in selected jurisdictions, and the implementation of an administrative claims program to handle claims outside the tort system.

February, 1986 – October, 1988
VICE PRESIDENT, LAW
Asbestos Claims Facility, Princeton, New Jersey
> The ACF was a joint venture of 35 companies and 16 of their insurers formed to handle asbestos claims against the members. As Vice President, Law, I was responsible for managing the defense of the members in all litigation nationwide. My accomplishments included reducing the number of law firms engaged in defending the members from over 1,100 to 65, resulting in cost savings of over $100 million annually, improving the success rate in cases that went to trial from 28% to 65% and the institution of programs to deal with persons with physical changes from exposure to asbestos, but no impairment from that exposure, outside the tort system.

February, 1980 – February, 1986
LEGAL COUNSEL
Owens-Illinois, Inc., Toledo, Ohio
> Responsible for managing asbestos personal injury claims, property damage claims and insurance litigation involving the company. Also had responsibility for a variety of non-asbestos matters, including major real estate acquisitions and divestitures, advertising and consumer affairs, labor matters and anti-trust compliance.

August, 1975 – February, 1980
ASSISTANT GENERAL ATTORNEY
Roper Corporation, Kankakee, Illinois
> Responsible for all product liability and insurance matters, as well as labor negotiations and arbitration, tax matters, anti-trust litigation and consumer affairs.

## EDUCATION

University of Illinois, B.S. in Accounting, 1970

University of Illinois, J.D., 1975

## *ADRPAC*

Detta D. Corona
4516 Lovers Lane, #236 - Dallas, TX 75225
214-528-3832 (Office) * 214-549-1732 (Cell) * 214-528-1313 (Fax)
*detta@adrpac.com*

May 10, 2007

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Mrs. Gail Garner
983 Brown Road
Rochester, NY 14622

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Ms. Nancy E. Freeman
DII Industries, LLC Asbestos PI Trust
7557 Rambler, Suite 100
Dallas, TX 75231

RE:   ADR Proceedings – Non-Binding Arbitration
Injured Party: Angelo Palermo; Claim No: 2001504

Dear Mrs. Garner and Ms. Freeman:

In accordance with the DII Industries, LLC, Asbestos PI Trust Alternative Dispute Resolution Procedures, the claimant has elected to strike Mr. Lawrence Fitzpatrick as a potential arbitrator in the above-referenced matter.

The remaining potential arbitrator is Mr. Douglas C. Allen. As the Private Adjudication Coordinator, I must confirm that Mr. Allen has no conflicts in this matter and that his schedule will permit him to conduct the arbitration within the time period set forth in the ADR Procedure.

As soon as I receive this confirmation, I will notify you of the appointment.

Yours truly,

Detta D. Corona
Private Adjudication Coordinator

/DDC

# ADRPAC

*Detta D. Corona*
*4516 Lovers Lane, #236  -  Dallas, TX  75225*
*214-528-3832 (Office)   *   214-549-1732 (Cell)   *   214-528-1313 (Fax)*
*detta@adrpac.com*

May 18, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Mrs. Gail Garner
983 Brown Road
Rochester, NY 14622

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Ms. Nancy E. Freeman
DII Industries, LLC Asbestos PI Trust
7557 Rambler, Suite 100
Dallas, TX 75231

RE:    *ADR Proceedings – Non-Binding Arbitration*
       *Injured Party: Angelo Palermo;  Claim No: 2001504*

Greetings:

This letter serves as confirmation that Douglas C. Allen has agreed to serve as the arbitrator in the above-referenced matter. As a result of Mr. Allen's appointment, please be advised that by no later than June 8, 2007, "each party shall submit to the opposing party and to the arbitrator a written statement (not to exceed ten (10) double-spaced pages) containing that party's positions and arguments."  Mr. Allen's mailing address is as follows:

Mr. Douglas C. Allen
Douglas C. Allen, P.A.
Dispute Management & Resolution
1457 Vermont Route 14N
East Montpelier, Vermont 05651

Lastly, when submitting your written statements to Mr. Allen, please insure that you also notify me of the submission as I must perform follow-up work with Mr. Allen regarding the pre-hearing conference.

Should you have any questions, or require further information, please do not hesitate to contact me.  Thank you.

Sincerely,

Detta D. Corona

/DDC

cc:    Mr. Douglas C. Allen

# ADRPAC

*Detta D. Corona*
*4516 Lovers Lane, #236 - Dallas, TX 75225*
*214-528-3832 (Office) * 214-549-1732 (Cell) * 214-528-1313 (Fax)*
*detta@adrpac.com*

July 6, 2007

**VIA CERTIFIED MAIL/RRR**
Mr. Douglas C. Allen
Dispute Management & Resolution
1457 Vermont Route 14N
East Montpelier, Vermont 05651

**VIA CERTIFIED MAIL/RRR**
Mrs. Gail Garner
983 Brown Road
Rochester, NY 14622

**VIA CERTIFIED MAIL/RRR**
Ms. Nancy E. Freeman
DII Industries Asbestos Trust
7557 Rambler, Suite 100
Dallas, TX 75231

**VIA CERTIFIED MAIL/RRR**
Ms. Marcellene Malouf
DII Industries Asbestos Trust
7557 Rambler, Suite 100
Dallas, TX 75231

**VIA CERTIFIED MAIL/RRR**
Ms. Beth Bivans
Hughes & Luce
1717 Main Street, Suite 2800
Dallas, Texas 75201

RE:    *Non-Binding Arbitration Telephonic Prehearing Conference*
       *Injured Party: Angelo Palermo; Claim No: 2001504*

Greetings:

This letter serves as follow-up confirmation for the telephonic prehearing conference conducted today, July 6, 2007, from 10:03 a.m. until 11:05 a.m. CST, regarding the above-mentioned non-binding arbitration.

Mr. Allen presided over the prehearing conference as the arbitrator. Available dates were discussed for the hearing, as were the options of video conferencing or walving the hearing if all parties agreed. The process steps, potential outcomes and further options that are available to the claimant and to the Trust in the DII Industries Trust ADR process were discussed at length, and Mrs. Garner indicated she understood.

The hearing for this matter will be held in person and is scheduled as follows:

> 9:30 a.m., Tuesday, August 21, 2007
> Resolutions, LLC
> 222 Berkeley Street, Suite 1060
> Boston, MA 02116
> 617-556-0800 (Office)

The supplemental position papers are to be submitted to the opposing party and Mr. Allen by July 16, 2007. Please use the following address for mailing documents to Mr. Allen:

> Mr. Douglas C. Allen
> Dispute Management & Resolution
> 1457 Vermont Route 14N
> East Montpelier, Vermont 05651

Please do not hesitate to contact me if I can be of further service.

Sincerely,

Detta D. Corona

/DDC

My Folders
e-mail
Sophia

Search Shortcuts
My Photos
My Attachments

ADVERTISEMENT



FREE Calls
for 30 Days
Then unlimited
calling for only
$24.99/MO

CLICK HERE

Hello Ms. Garner:

I am still in California and have finally physically come to a computer
store so that I could log onto the computer and my email and can forward
you the attachment from Mr. Allen.  I apologize for the delay but have
had the worst time with my blackberry and email.  I was able to open the
attachment on my blackberry but could not read it nor forward it.  I'm
not sure what is happening but it must be my wireless service.  I would
have called you but I was unable to read the attachment so had no news
to deliver.  I am not downloading or opening the attachment on this
public computer, just forwarding to you.

I am now forwarding you this email that I received Friday from Mr. Allen
and when I return to my desk Wednesday morning, I should have the actual
hard copy that I will be able to distribute immediately.

http://us.mc345.mail.yahoo.com/mc/showMessage?fid=Inbox&sort=dat...Kyyo0IAAT3yRXC1WwZp8Fzbluk,1_26695_AK2yo0IAAPMfRXCy4AlLZWPPVak,    Page 1 of 2

[FWD: DII Industries Asbestos PI Trust: Non-Binding Arbitration Award for Palermo Claim] – Inbox – Yahoo! Mail                    9/7/08 7:36 PM

Thank you and have a great day!

Detta Corona

> -------- Original Message --------
> Subject: DII Industries Asbestos PI Trust: Non-Binding Arbitration
> Award for Palermo Claim
> From: "Doug Allen" <dallen@dcallenpa.com>
> Date: Fri, August 31, 2007 1:13 pm
> To: <detta@adrpac.com>
>
>

Delete    Reply    Forward    Spam    Move...

Previous | Next | Back to Messages        Select Message Encoding        : | Full Headers

Check Mail    Compose                                    Search Mail    Search the Web

Copyright 1994-2008 Yahoo! Inc. All rights reserved. Terms of Service · Copyright/IP Policy · Guidelines
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy

GAIL GARNER, AS REPRESENTATIVE OF              )
ANGELO PALERMO,                                )
                                               )
                         Claimant.             )    CLAIM NO.: 2001504: Angelo Palermo
                                               )    SSN: 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
vs.                                            )
                                               )
DII INDUSTRIES, LLC ASBESTOS PI TRUST,         )
                                               )    August 30, 2007
                         Respondent.           )
                                               )
                                               )

                              Award

    Pursuant to the DII Industries, LLC Asbestos PI Trust Alternative Dispute Resolution Procedures, a non-binding arbitration hearing in the matter of Angelo Palermo was conducted August 21, 2007 in Boston, Massachusetts.

    Having heard the testimony and presentations by Ms. Garner and Trust counsel, reviewed the initial and supplemental arbitration briefs filed by Ms. Garner and the Trust, reviewed the DII Industries, LLC Asbestos PI Trust Distribution Procedures, and carefully considered all the arguments and evidence of the Parties pursuant to the Trust Alternative Dispute Resolution Procedures, I find in favor of the DII Industries, LLC Asbestos PI Trust and award claimant S0.


                                    Douglas C. Allen, Arbitrator

# RESOLUTIONS, LLC

Friday, September 26, 2008



| Eric D. Green | Carmin C. Reiss | Douglas C. Allen |

# PRINCIPALS

### Eric D. Green

Professor Eric D. Green teaches negotiation, mediation, complex ADR processes, resolution of mass torts and evidence at Boston University School of Law. He is a co-founder and principal of Resolutions, LLC, a mediation, arbitration and ADR provider in Boston, MA . He was a co-founder of JAMS/Endispute and a member of the Center for Public Resources Institute of Dispute Resolution at its inception. He was a co-author of the first edition of *Dispute Resolution* (with Goldberg and Sander) and has written many books and articles on dispute resolution and evidence. Professor Green maintains an active ADR practice for complex legally intensive disputes.

Professor Green has successfully mediated many high stakes cases, including the United States v. Microsoft anti-trust case, the MasterCard/Visa merchants' class action anti-trust case, the Monsanto PCB cases in Alabama, the childhood and adult cancer cases in Toms River, New Jersey, numerous large construction cases, including most of the disputes arising out of the design and construction of major league baseball and football stadiums, insurance coverage, intellectual property, and international disputes  He has also mediated many complex, multi-party class action cases involving mergers and acquisitions, contract disputes, patent disputes, securities fraud, shareholder derivative claims, accounting problems, mass torts, employment and consumer claims. Professor Green's involvement in Alternative Dispute Resolution started in 1977 when he helped invent the "mini-trial," which he has since adapted and applied to many types of cases involving complicated issues of law, fact and science. Professor Green also serves as the court appointed Special Master, Futures Representative and Guardian Ad Litem in class or mass claimant matters

In his career Professor Green has delivered hundreds of lectures, panel discussions and training sessions on ADR and taught or supervised more than a thousand students in ADR while mediating more than a hundred cases a year. In 2001, Professor Green was awarded a Lifetime Achievement Award from the American College of Civil Trial Mediators

Professor Green has designed and delivered hundreds of specialized negotiation training workshops for corporations, government agencies, insurance companies, educational institutions, law firms, non-profit organizations, and professional and practice groups. These training programs are highly interactive, hands-on, and practical workshops on negotiation objectives, tactics, strategy and power  Course materials are tailored to the audience and provide a conceptual framework for the practical negotiation exercises.

Click here for the full resume

-top-

### Carmin C. Reiss

Carmin C. Reiss is a principal of Resolutions, LLC and was formerly a Senior Mediator with JAMS/Endispute . Since 1990, she has had an active mediation practice focusing on environmental, construction, commercial, insurance, employment, professional liability, and personal injury disputes, often in the form of large, complex, multi-party controversies. Ms. Reiss serves as a member of the Middlesex Multi-door Courthouse panel of mediators. She has also served on the FDIC mediation roster, and as an approved mediator for EPA matters, including large superfund cases. Prior to joining JAMS/Endispute, Ms. Reiss was a trial lawyer at Bingham & Dana and a member of that firm's Environmental Practice Group. She is the author of "Environmental Contamination Disputes," in *Mediating Legal Disputes* (Golann ed. 1996), winner of the 1996 CPR Book

Award, and one of the ADR Editors for MCLE's recent Superior Court Practice Guide.

Click here for the full resume

-top-


# AFFILIATED PROFESSIONALS

### Douglas C. Allen, P.A.

Douglas C. Allen is a solo practitioner providing dispute resolution services for commercial cases involving science and technology and other cases having complex and technical information and data. Mr Allen's background combines degrees in science and engineering, over twenty years of consulting experience, and a thorough knowledge of and practical experience with alternative dispute resolution processes. Since 1998, Mr. Allen has worked with Resolutions, LLC on over 30 cases as a neutral expert and co-mediator for a wide range of dispute areas including class actions, construction, environmental cost allocations, insurance coverage, intellectual property, mass tort, product liability, and telecommunications.

Click here for Mr Allen's web site and full resume

-top-

222 Berkeley Street. Suite 1060
Boston. Massachusetts 02116

© Copyright 2005 Resolutions, LLC  All Rights Reserved


## Two Twenty Two Berkeley
### VISITOR
# Gail Garner



Destination
**222-10**

**08/21/07**    390253 Printed at 09:01 **08:30**

Boston University School of Law

# BU School of Law

## Eric D. Green

### EDUCATION

**Brown University**, Providence, RI
A.B. *with honors*, American Civilization, 1968

**Harvard Law School**, Cambridge, MA
J.D., *magna cum laude*, 1972

- Knox Memorial Traveling Fellowship Award 1972-73
- Harvard Law Review Editor and Executive Editor, Vols. 84-85
- Harvard Civil Rights-Civil Liberties Law Review
- Co-author, Summer Research Project Note, Vol. 6

**Cambridge University**, Cambridge, England

- Research Student in Criminology
- Knox Fellow, 1972-1973

### EXPERIENCE

**Boston University School of Law**, Boston, MA
*Professor of Law* (1977-present)

**Resolutions, LLC**, Boston, MA
*Founder* (1997-present)

**J.A.M.S/Endispute, Inc.**, Boston, MA
*Founder, Director, Chief Mediator, Executive Committee* (1981-1997)

**Harvard Law School**, Cambridge, MA
*Visiting Professor* (Fall, 1979)

**Federal Trade Commission**, Los Angeles, CA
*Attorney Advisor to the Regional Director* (June - August, 1978)

**Munger, Tolles & Olson**, Los Angeles, CA
*Partner - General Civil Litigation* (1974-1977)

**Justice Benjamin Kaplan**, Massachusetts Supreme Judicial Court, Boston, MA
*Law Clerk* (1973-1974)

**Green International, Inc.**, Sewickley, Pennsylvania
*Surveyor, Draftsman, General Counsel, Board of Directors* (1961-1981)

### TEACHING EXPERIENCE

- Professor, Boston University School of Law – currently teaching courses and seminars in Evidence, Dispute Resolution, Complex Processes, Negotiation and Mediation, and Mass Torts