Andrew L. Morrison (AM 1071)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3900 (Tel)
(212) 536-3901 (Fax)

Beth W. Bivans (TX Bar 00797664)
1717 Main Street, Suite 2800
Dallas, Texas  75201
(214) 939-5500 (Tel)
(214) 939-5849 (Fax)

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **GAIL GARNER, AS REPRESENTATIVE OF THE ESTATE OF ANGELO PALERMO,** | X : | |
| **Plaintiff,** | : | |
| **v.** | : | **08-Civ-06191 (CJS)** |
| **DII INDUSTRIES, LLC ASBESTOS PI TRUST, MARK M. GLEASON, and MARCELLENE MALOUF** | : | |
| **Defendants.** | : X | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

I.   INTRODUCTION AND SUMMARY .................................................1

II.  FACTS AND PROCEDURAL HISTORY ............................................2

    A.   The Creation and Administration of the Trust ...............................2

    B.   The Trust's Denial of Plaintiff's Claim .........................................4

        1.   Plaintiff's Underlying Claim Fails to Satisfy the Trust's Medical Criteria ...............................................................4

        2.   Plaintiff's Underlying Claim Was Also Barred By the Statute of Limitations ................................................5

        3.   Plaintiff's Claim Was Not an "Extraordinary Claim" Under the TDP .........................................................6

        4.   The Pro Bono Evaluator and Arbitrator Uphold the Trust's Decision ...................................................6

        5.   Plaintiff Rejects the Trust's, the Evaluator's and the Arbitrator's Decisions and Files this Lawsuit, and Defendants Move to Dismiss .....................................7

III. ARGUMENTS AND AUTHORITIES .................................................8

    A.   The Rule 12(b)(6) Standard .........................................................8

    B.   Plaintiff's Negligence Claim Against the Trust is Barred as a Matter of Law ......................................................................8

    C.   Plaintiff's Claim Against Gleason and Malouf for Breach of Fiduciary Duty Should Be Dismissed .........................................11

        1.   As a Matter of Law, Plaintiff Did Not Have a Fiduciary Relationship With Gleason or Malouf .....................12

        2.   Even if Gleason and Malouf Owed a Duty to Plaintiff, There Was No Breach ..................................12

        3.   The Claim Against Gleason and Malouf Should Be Dismissed Because Plaintiff is Prohibited From Asserting Claims Against Individual Defendants By Order of the Bankruptcy Court ...........15

    D.   Plaintiff's Claim for Negligent Hiring and Supervision Should Be Dismissed ...............................................................17

IV.  CONCLUSION .....................................................................17

CERTIFICATE OF SERVICE ...............................................................18

i

# TABLE OF AUTHORITIES

## CASES

*Bell Atlantic Corporation v. Twombly*,
   127 S.Ct. 1955 (2007) ..............................................................................................8

*Cortec Industries, Inc. v. Sum Holding, L.P.*,
   949 F.2d 42 (2d Cir. 1991) ......................................................................................8

*Faulkner v. Beer*,
   463 F.3d 133 (2d Cir. 2006) .................................................................................3, 8

*Hennenberry v. Sumitomo Corporation of America*,
   415 F.Supp.2d 423 (S.D.N.Y. 2006) .....................................................................11

*In re Cowles' Will*,
   255 N.Y. S.2d 160 (N.Y. App. Div. 1965) ............................................................16

*In re Lare's Estate*,
   42 Pa. D. & C.2d 719, WL 5787 (Pa. Orph. 1967) ...............................................13

*In re Macfarlane's Estate*,
   177 A. 12 (Pa. 1935) .........................................................................................13, 15

*In re Mendenhall*,
   398 A.2d 951 (Pa. 1979) ........................................................................................13

*In re Mintz' Trust*,
   282 A.2d 295 (Pa. 1971) ........................................................................................14

*Jones v. Bock*,
   127 S.Ct. 910 (2007) ................................................................................................8

*Kahn v. Kohlberg, Kravis, Roberts & Company*,
   970 F.2d 1030 (2d Cir. 1992) ..................................................................................9

*O'Hayer v. St. Aubin*,
   293 N.Y.S.2d 147 (N.Y. App. Div. 1968) .............................................................16

*Primeau v. Town of Amherst*,
   303 A.D.2d 1035 , 757 N.Y.S.2d 201 (App. Div. 2003) .......................................17

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) .................................................................................3, 8

*Stark v. United States Trust Company*,
   445 F.Supp. 670 (S.D.N.Y.) ......................................................................13, 15, 16

*Wetherill v. Eli Lilly & Company*,
   678 N.E.2d 474 (N.Y. 1997) ..............................................................................9, 10

*Whitney v. Quaker Chemical Corporation*,
  683 N.E.2d 768 (N.Y. 1997)......................................................................................9

**OTHER AUTHORITIES**

11 U.S.C. § 524...............................................................................................................15

20 Pa.C.S.A. § 7771.......................................................................................................13

20 Pa.C.S.A. § 7774...................................................................................................12, 13

FED. R. CIV. P. 12(b)(6) ...............................................................................................8, 9

N.Y. C.P.L.R. §214 (McKinney 2003) .......................................................................9, 10

RESTATEMENT (SECOND) OF TRUSTS § 176 (2008) ....................................................12

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants DII Industries, LLC Asbestos PI Trust (the "Trust"), Mark M. Gleason ("Gleason"), and Marcellene Malouf ("Malouf," and collectively with the Trust and Gleason, the "Defendants") file this Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (the "Motion").

## I. INTRODUCTION AND SUMMARY

The Trust was created pursuant to Section 524(g) of the Bankruptcy Code to assume and discharge the asbestos liabilities of bankrupt affiliates of Halliburton and Harbison-Walker. In April 2006, Plaintiff Gail Garner ("Garner" or "Plaintiff") filed a claim with the Trust, asserting that her father's death forty years earlier in 1966 was caused by his exposure to asbestos products manufactured by such entities. The Trust denied Plaintiff's claim because it failed to establish that her father suffered from a compensable illness and, in addition, was barred by the applicable statute of limitation. Unsatisfied, Plaintiff appealed the Trust's decision first to a pro bono evaluator and then to an arbitrator, both of whom affirmed the Trust's denial of her claim. Still unsatisfied, Garner now appeals to this Court for relief.

Plaintiff's First Amended Complaint (the "Amended Complaint") purports to assert the following three causes of action: (i) "Negligence" against the Trust, an asbestos personal injury claim based on the Trust's alleged role in Plaintiff's father's death in 1966; (ii) "Breach of Fiduciary Duty" against Defendants Gleason and Malouf for their roles in the Trust's denial of Plaintiff's underlying asbestos claim; and (iii) "Negligent Hiring and Supervision of Defendants Gleason and Malouf" against the Trust, based on the Trust's purported "ratification" of Gleason's and Malouf's alleged breaches of fiduciary duty. Each of Plaintiff's claims is defective as a matter of law and should be dismissed with prejudice.

First, Plaintiff's asbestos personal injury claim is invalid as a matter of law because it is barred by the statute of limitations.  Second, Plaintiff's breach of fiduciary duty claim should be dismissed because (a) Gleason and Malouf do not, as a matter of law, owe any duty to Plaintiff; (b) the Trust's denial of her underlying asbestos personal injury claim was proper because it (i) is barred by the statute of limitations and (ii) failed to establish that her father suffered an injury caused by asbestos exposure; and (c) is prohibited by order of the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court").  Third, Plaintiff's claim for negligent hiring and supervision fails as a matter of law because neither Gleason nor Malouf committed any tort or engaged in other actionable conduct.

In the end, Plaintiff's Amended Complaint collapses under its own weight.  Plaintiff's underlying asbestos personal injury claim – Count One – is barred as a matter of law by limitations, which, in turn, means that individual Defendants Gleason and Malouf did not breach any duty – Count Two – to the Plaintiff by participating in the Trust's denial of her claim.  Because the individual Defendants did not, as a matter of law, commit any actionable tort against the Plaintiff, Plaintiff's claim that the Trust negligently hired and supervised them – Count Three – also collapses.  For all these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

## II.  FACTS AND PROCEDURAL HISTORY

### A.     The Creation and Administration of the Trust

In December 2003, several subsidiaries or affiliates of Halliburton Company (the "Debtors") filed petitions for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.  The Trust arose from those proceedings and assumed Debtors' asbestos-related liabilities, pursuant to Section 524(g) of Chapter 11 and Debtors' reorganization plan ("Plan").

The Trust operates pursuant to Trust Distribution Procedures ("TDP"), which govern the processing and payment of claims on "an impartial, first-in-first-out basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system."  TDP § 2.1.[1]  In the relevant part, the TDP requires a person allegedly injured by his or her exposure to an asbestos-containing product manufactured or distributed by a Halliburton Entity to submit a claim to the Trust for Expedited or Individual Review.  If a claimant requests an Expedited Review of her claim and submits credible evidence that satisfies the Trust's Medical and Exposure Criteria (for example, medical records containing a qualified physician's diagnosis of mesothelioma and verified employment records establishing that the claimant worked with a Halliburton asbestos-containing product), the Trust will offer to settle the claim for its Scheduled Value.  *Id.* §§ 5.3(a) and 5.7.  If a claimant requests Individual Review of her claim, as Garner did, and submits credible evidence that satisfies the Trust's Medical and Exposure Criteria or establishes that claim is compensable in the tort system, the Trust will offer to settle the claim for an amount derived from historical liquidated values of similarly situated claims in the tort system, but its offer cannot exceed the claim's Maximum Value.  *Id.* §§ 5.3(b) and 5.7.  The TDP also requires a claimant to satisfy the applicable statute of limitations.  *Id.* §§ 5.1(a)(2).

If the claim fails to satisfy the TDP criteria, the Trust will deny the claim.  If a claimant disagrees with the Trust's denial, the TDP prescribes alternative dispute resolution ("ADR") procedures, including evaluation by a qualified and independent pro bono evaluator and non-

---

[1] A copy of the relevant TDP is before the Court as Exhibit 7 to Plaintiff's Original Complaint. As such, the TDP and other exhibits attached to, or referenced or relied upon in, the Complaint can be considered by the Court in deciding this Motion.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Faulkner v. Beer*, 463 F.3d 133, 133-35 (2d Cir. 2006).  The TDP also was filed in the Bankruptcy Court and therefore is a public record; as such, this Court is free to take judicial notice of it.  A complete copy of the TDP is attached as Exhibit A hereto.

binding arbitration.  *Id*. § 5.10.  If a claimant remains unsatisfied with the determination following pro bono evaluation and arbitration, the TDP permits the filing of asbestos claims in a court of competent jurisdiction, limiting any recovery in such court to the values proscribed in the TDP.  *Id.* §§ 5.11, 7.6, and 7.7.

## B.    The Trust's Denial of Plaintiff's Claim

On April 4, 2006, Plaintiff filed her underlying claim with the Trust, seeking payment in connection with the death of her father Angelo Palermo, who died forty years earlier in April 1966.  *See* Amended Complaint at ¶¶ 14 and 19-20.  Plaintiff's claim satisfied the TDP's Exposure Criteria, but was denied by the Trust because (1) she could not produce sufficient medical evidence that her father suffered a compensable injury and (2) the claim was barred by the applicable statue of limitations.

### 1.    Plaintiff's Underlying Claim Fails to Satisfy the Trust's Medical Criteria

Plaintiff claimed that her father had been diagnosed with mesothelioma.  *See* Exhibit 2 to Original Complaint, DII Trust Pro Se Claim Form.  Pursuant to the TDP, an acceptable diagnosis must be based on either:

> (i) a physical examination of the claimant by the physician providing the diagnosis . . . or (ii) a diagnosis of such a [disease] by a board-certified pathologist or by a pathology report prepared at or on behalf of a hospital accredited by the Joint Commission on Accreditation of Healthcare Organizations.

TDP § 5.7(a)(1)(B); *see also id.* § 5.7(a)(2) ("Before making any payment to a claimant, the [Trust] must have reasonable confidence that the medical evidence provided in support of the claim is competent medical evidence of an asbestos-related injury and is consistent with recognized medical standards.").  Plaintiff's purported diagnosis was based on neither.  Rather, Plaintiff submitted only a July 11, 2002 letter from Dr. William Beckett, which Plaintiff candidly admits was "not a formal medical diagnosis." *See* Exhibit 1 to Original Complaint, Letter Brief

for Arbitration Evaluation at p.3.[2]  Dr. Beckett's letter was based merely on a review of the death certificate, which identified Mr. Palmero's cause of death as acute liver failure due to metastatic stomach cancer, and some photographs of Mr. Palermo before his death.  Indeed, after noting the he "never treated the patient and never examined him," and so "can really only speculate as to the primary source of his cancer," Dr. Beckett opined that "it seems quite possible that the patient's fatal malignancy could have been a diffuse malignant mesothelioma of the peritoneum rather than a primary from the stomach." *See* Exhibit 2 to Original Complaint, Letter from Dr. William Beckett. Such speculation does not satisfactorily establish that Mr. Palermo suffered from mesothelioma.

Additionally, Plaintiff erroneously claimed that other asbestos trusts had acknowledged the validity of her claim.  The decisions of attorneys administering other trusts governed by other procedures do not satisfy the Trust's Medical Criteria.

Accordingly, the Trust denied Plaintiff's claim.

## 2.    <u>Plaintiff's Underlying Claim Was Also Barred by the Statute of Limitations</u>

Separately, the Trust also denied Plaintiff's underlying claim because it did not satisfy the statute of limitations.  Plaintiff's father died on **April 23, 1966.**  *See* Amended Complaint at ¶ 14. Plaintiff readily admits that she first suspected her father's death was related to asbestos exposure when one of her father's co-workers was diagnosed with mesothelioma.  *See* Exhibit 1 to Original Complaint, Letter Brief for Arbitration Evaluation at p.3.  Although Plaintiff does not identify the date of such diagnosis, she acknowledges that she conducted research concerning

---

[2]  For the convenience of the Court, Defendants have attached copies of the the Exhibits to Ms. Garner's Original Complaint.  These documents are proper for the Court to consider given that they were submitted by Plaintiff as part of her Original Complaint and because they are referred to throughout her First Amended Complaint.  These documents are part of the pleadings before the Court.

asbestos and mesothelioma and attempted to hire an attorney to handle her asbestos claims prior to February 2000 and filed a claim based on her father's purported asbestos exposure against the Johns-Manville Trust in February 2000.  *See* Exhibit 1 to Original Complaint, Letter Brief for Arbitration Evaluation at pp.1 and 3.  In other words, by February 2000 at the latest, Plaintiff had legally "discovered" that her father's death was the result of asbestos exposure.  Therefore, based on the three-year statute of limitations and discovery rule applicable in New York, Plaintiff's claim expired, at the latest, in February 2003 – three years from the date that she brought her original asbestos claim against the Johns-Manville Trust, and long before she filed her claim against the Trust in April 2006.  As such, the Trust also denied her claim on the alternative basis of the statute of limitations.

### 3.    Plaintiff's Claim Was Not an "Extraordinary Claim" Under the TDP

The Trust also refused to treat Plaintiff's underlying asbestos personal injury claim as an "extraordinary claim" within the meaning of the TDP.  Under the TDP, an "extraordinary claim" is:

> an Asbestos Unsecured PI Trust Claim that otherwise satisfies the Medical Criteria for Disease Levels II-VIII and that is held by a claimant whose exposure to asbestos (i) occurred primarily as a result of working in manufacturing facilities of one or more of the Halliburton Entities . . . or their predecessors during a period in which they were manufacturing asbestos-containing products at the facility . . . or (ii) was at least 75% the result of Company Exposure as defined in section 5.7(c) below, and there is little likelihood of a substantial recovery elsewhere.

TDP § 5.4(a)(1) (emphasis added).  The Trust's denial of "extraordinary claim" status was based on, among other things, Plaintiff's inability to satisfy the Trust's Medical Criteria and her recoveries elsewhere.

4.    **The Pro Bono Evaluator and Arbitrator Uphold the Trust's Decision**

Following the denial of the claim by the Trust, Plaintiff pursued pro bono evaluation pursuant to the TDP's ADR procedures, and the pro bono evaluator affirmed the Trust's decision. *See* Amended Complaint at ¶ 27. More specifically, the Pro Bono Evaluator found that: (1) the statute of limitations was a "complete bar" to the claim; (2) Plaintiff did not provide "any evidence to support with reasonable medical probability that the correct diagnosis of Mr. Palermo's illness was peritoneal mesothelioma;" and (3) Plaintiff failed to produce any evidence supporting the classification of her claim as an "Extraordinary Claim" within the meaning of the TDP. *See* Pro Bono Evaluator's Report at ¶¶ 1-5, Exhibit B hereto.

Plaintiff next invoked the non-binding arbitration provisions of the TDP, and an arbitrator also affirmed the Trust's decision, denying any recovery to the Plaintiff. *See* Amended Complaint at ¶ 27; Exhibit 1 to Original Complaint, Arbitration Award.

5.    **Plaintiff Rejects the Trust's, the Evaluator's and the Arbitrator's Decisions and Files This Lawsuit, and Defendants Move to Dismiss**

Plaintiff rejected the arbitrator's award, and, on April 25, 2008, Plaintiff, proceeding *pro se*, filed her Original Complaint in this court (Docket Entry ("D.E.") 1).

Defendants filed their Original Motion to Dismiss (D.E. 4) on August 25, 2008. Garner, then still proceeding *pro se*, responded on September 29, 2008 (D.E. 11), and oral argument was set for December 11, 2008 (D.E. 10). On December 5, 2008, Garner sent a letter (D.E. 20) to the Court seeking postponement of the oral argument in order to continue her search for counsel. The Court granted Garner's request (D.E. 20), ordering that Garner's new counsel (if any) file a response to the Original Motion to Dismiss by February 6, 2009. Garner's counsel entered an appearance in this case on January 28, 2009 (D.E. 21).

Plaintiff's counsel filed Garner's Amended Complaint (D.E. 28) on March 27, 2009, superseding the Original Complaint and rendering moot the Defendants' Original Motion to Dismiss.  However, while more artfully drafted than its predecessor, Plaintiff's Amended Complaint is plagued by the same fatal defects as her Original Complaint.  Defendants now file this second Motion to Dismiss and seek the dismissal of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted.

### III.  ARGUMENTS AND AUTHORITIES

**A.**     **The Rule 12(b)(6) Standard**

In reviewing a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  Such a motion should be granted unless the plaintiff pleads enough facts to state a plausible claim to relief, raising the right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

In ruling on a Rule 12(b)(6) motion, the Court cannot look beyond the pleadings.  However, the "pleadings" include the Complaint and any documents attached to it.  Indeed, as the Second Circuit has held, "[e]ven if not attached or incorporated by reference, a document upon which [the complaint] solely relies and which is integral to the complaint may be considered by the court in ruling on [a Rule 12(b)(6)] motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Faulkner v. Beer*, 463 F.3d 133-35 (2d Cir. 2006) (same); *Cortec Indus., Inc., v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (if plaintiff's claims are predicated on documents, defendant may attach those documents to a Rule 12(b)(6) motion even if plaintiff's complaint does not explicitly refer to them).

**B.**     <u>**Plaintiff's Negligence Claim Against the Trust is Barred as a Matter of Law**</u>

Count One of Plaintiff's Amended Complaint is a negligence-based claim for asbestos personal injury based on the death of Mr. Palermo in 1966, the same claim that was rejected by the Trust, the pro bono evaluator, and the arbitrator as barred by the applicable statute of limitations.  This fatal legal defect is plain on the face of the Amended Complaint entitling the Defendants to dismissal with prejudice under Rule 12(b)(6).  *See Jones v. Bock*, 127 S.Ct. 910, 920-21 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Kahn v. Kohlberg, Kravis, Roberts & Co*., 970 F.2d 1030, 1042 (2d Cir. 1992) (because complaint and attached exhibits showed that the statute of limitations had run, dismissal under Rule 12(b)(6) was proper).

Under New York law, an asbestos-related personal injury action must be commenced within three years from "date of discovery of the injury or from the date when through the exercise of reasonable diligence such injury should have been discovered."  N.Y. C.P.L.R., § 214.5 (McKinney 2003).  Importantly, "discovery of the injury" means the time "when the injured party discovers ***the primary condition*** on which the claim is based," and ***not*** discovery of the ***cause*** of the injury.  *Whitney v. Quaker Chem. Corp.*, 683 N.E.2d 768, 768-69 (N.Y. 1997) (emphasis added); *see also Wetherill v. Eli Lilly & Co.*, 678 N.E.2d 474 (N.Y. 1997) (holding that nothing in the language or history of C.P.L.R. § 214-c.2 "suggest[s] that the Legislature intended to make the running of the Statute of Limitations depend on claimants' subjective understanding of the etiology of their conditions.").

The facts and reasoning behind the *Wetherill* decision are on-point.  In *Wetherill*, the plaintiff brought suit in August 1992 for injuries related to the drug diethylstilbestrol ("DES")

that her mother may have ingested while pregnant with the plaintiff many years earlier. However, the plaintiff's deposition revealed that she "first learned about DES and the possibility that her mother had ingested it during a telephone conversation with her sister that took place in or about March of 1988." *Wetherill v. Eli Lilly & Co.*, 678 N.E.2d at 475. The plaintiff waited until late 1989 to investigate the matter after overhearing her treating physician tell a medical assistant that "her medical history revealed classic symptoms of DES." *Id.* (internal quotations omitted). While the plaintiff argued that the statute of limitations did not commence until late 1989 when she overheard the physician's comments, the court disagreed and ruled that the statute of limitations began running no later than March 1988 and that her claim had therefore expired. The *Wetherill* court's holding reveals the intent and limits of C.P.L.R. § 214-c.2, confirming that its reference to "discovery of the injury" was "intended to mean discovery of the condition on which the claim was based and nothing more." *Id.* at 478.

Plaintiff's Amended Complaint confirms that she "discovered" the purportedly asbestos-related nature of her father's death by, at the latest, February 2000 when she filed her claim against the Johns-Manville Trust. *See* Amended Complaint at ¶¶ 17-18; Exhibit 1 to Original Complaint, Letter Brief for Arbitration Evaluation at p.3. As such, the statute of limitations on Plaintiff's claim against the Trust then began to run and expired in February 2003.

In a last-ditch effort to avoid the clear bar of limitations, Plaintiff contends that she did not discover the role of asbestos in her father's death until June 6, 2003, when the Extraordinary Claims Panel of the Johns-Manville Trust granted her claim against that trust. *See* Amended Complaint at ¶¶ 17-18. However, this argument puts the cart before the horse: Plaintiff, by definition, must have "discovered" the asbestos-related nature of her father's death prior to her bringing her February 2000 claim asserting exactly that. Plaintiff cannot reasonably contend that

her "discovery" of the role asbestos played in her father's death came over three years *after* she brought a claim alleging that asbestos played a role in her father's death. The latest event that commenced the running of limitations was Plaintiff's claim against the Johns-Manville Trust in February 2000, not that trust's eventual award to Garner in June 2003. Therefore, Plaintiff's April 5, 2006 claim against the Trust is manifestly untimely. Because Plaintiff's failure to satisfy the statute of limitations is plain on the face of her Amended Complaint, this Court should dismiss with prejudice Plaintiff's claim for negligence against the Trust.

**C.**     **Plaintiff's Claim Against Gleason and Malouf for Breach of Fiduciary Duty Should Be Dismissed**

Not content merely to sue the Trust based on the denial of her asbestos personal injury claim, Plaintiff also pursues a claim against two individual Defendants, Gleason (a Trustee) and Malouf (an officer of the Trust), based on their role in denying her claim. The nominal basis for Plaintiff's claim against Gleason and Malouf is breach of fiduciary duty, but Plaintiff fails to allege what was her fiduciary relationship with the two individual Defendants. Even if a fiduciary relationship did somehow exist between the Plaintiff and the individual Defendants (which Defendants deny), the Trust's denial of Plaintiff's claim was entirely proper and, as such, Gleason and Malouf did not breach any duty to Plaintiff.

Moreover, the Bankruptcy Court's Confirmation Order creating the Trust anticipated that frustrated claimants might vent their ire by attempting to sue the Trust's officers and Trustees and the Confirmation Order wisely enjoined this practice. Under the Confirmation Order, Plaintiff is prohibited from seeking relief from Trustees or officers of the Trust, except for such individuals' breaches of trust committed in bad faith. Plaintiff has not alleged that Gleason or Malouf committed such a breach. Therefore, the claims against both Gleason and Malouf should be dismissed.

"Under New York law, a breach of fiduciary duty claim requires (1) the existence of a fiduciary relationship between the parties and (2) a breach of the duty flowing from that relationship." *Hennenberry v. Sumitomo Corp. of Am.*, 415 F.Supp.2d 423, 459 (S.D.N.Y. 2006). Plaintiff's Amended Complaint fails to properly allege either of these required elements.

### 1. As a Matter of Law, Plaintiff Did Not Have a Fiduciary Relationship With Gleason or Malouf

First, the Trust's officers and trustees owe fiduciary duties to the Trust itself, not to unsuccessful claimants such as Garner. Ms. Malouf, as Executive Director, owes a fiduciary duty *only to the Trust*. Mr. Gleason, as a Trustee, owes duties to the Trust and has a "duty to the beneficiaries to use reasonable care and skill to preserve the trust property." Restatement (Second) Of Trusts § 176 (2008); 20 Pa.C.S.A. § 7774.[3] However, Plaintiff makes no allegation that Gleason failed to use reasonable care and skill. Moreover, in light of the multiple fatal defects in her claim, Plaintiff cannot allege that she is a proper beneficiary of the Trust and, thus, cannot allege any duty was owed to her in that capacity.[4] Plaintiff's apparent position is that Defendants owed fiduciary duties to mere claimants – as distinct from proper beneficiaries – of the Trust, a radical theory that would expose the Trust, its individual trustees and officers, and even the pro bono evaluators and arbitrators to potential suit for breach of fiduciary duty every time they deny a claim. The Court should dismiss the Plaintiff's imaginative attempt to elevate the routine rejection of an untimely claim by the Trust into a breach of fiduciary duty.

---

[3] The Trust is established under Pennsylvania law. Therefore, while the claims filed by Plaintiff fall under New York law, Pennsylvania law is cited with respect to issues impacting the Trust agreement.

[4] Ironically, had Gleason and Malouf authorized the distribution of funds to Plaintiff, they may have violated their fiduciary duties to the Trust and its legitimate beneficiaries, as Gleason and Malouf reasonably concluded that the Plaintiff has no entitlement to such funds.

2.    **Even if Gleason and Malouf Owed a Duty to Plaintiff, There Was No Breach**

To the extent that Gleason and Malouf owed Plaintiff any duty at all, it was, at most, to make a good faith and reasonable effort to insure that her claim against the Trust was disposed of properly. New York law governing the duties of trustees confirms this:

> In the substantial body of New York law governing the duties and responsibilities of trustees and applicable herein, a number of fundamental principles have evolved which are relevant to and determinative of the issues in this case. It is clear that a trustee is neither insurer nor guarantor of the value of a trust's assets. A trustee's performance is not judged by success or failure i.e., right or wrong and while negligence may result in liability, *a mere error in judgment will not*. Neither prophecy nor prescience is expected of trustees *and their performance must be judged not by hindsight but by which existed at the time of the occurrence.*

*Stark v. United States Trust Co.*, 445 F.Supp. 670, 678-679 (S.D.N.Y.) (emphasis added). Pennsylvania law – the law applicable to the Trust – is the same. Under Pennsylvania law, a trustee is required to administer the trust in good faith, in accordance with all provisions and purposes of the trust, and in the best interests of the beneficiaries. 20 Pa.C.S.A. § 7771. Furthermore, a trustee is required to "administer the trust as a prudent person would, by considering the purposes, provisions, distributional requirements and other circumstances of the trust and by exercising reasonable care, skill and caution." 20 Pa.C.S.A. § 7774. This "ordinary prudence" standard of care has been defined as doing that which a person of ordinary prudence would "exercise in connection with the management of his or her own estate." *In re Mendenhall*, 398 A.2d 951, 953 (Pa. 1979). The standard of care or measure of duty has also been described as the "good business judgment and foresight, *under the existing circumstances*, as a prudent man would use in handling the property of another." *In re Macfarlane's Estate*, 177 A. 12, 16 (Pa. 1935) (emphasis added). Additionally, Pennsylvania law holds that if a fiduciary acts in good faith under advice of competent counsel he may not be liable for mistakes of law or errors

of judgment. *In re Mintz' Trust*, 282 A.2d 295, 301 (Pa. 1971); *In re Lare's Estate*, 42 Pa. D. & C.2d 719, 1967 WL 5787, (Pa. Orph. 1967).

As discussed in detail above, the Trust reasonably denied Plaintiff's claim for her failure to satisfy the statute of limitations. Moreover, as discussed in detail below, the Trust also reasonably denied Plaintiff's claim because she did not provide it with an acceptable medical diagnosis of her father's alleged condition. In addition, the Trust's decision to deny Plaintiff's claim was *per se* reasonable and made in good-faith in light of the pro bono evaluator's and arbitrator's subsequent affirmances. *See* Amended Complaint at ¶ 27.

To be entitled to a distribution under the TDP, a claimant must come forward with either (i) a physical examination by a physician providing a diagnosis of the asbestos-related disease or (ii) a diagnosis of the malignant disease by a board-certified pathologist. *See* TDP § 5.7(a)(1)(B). Plaintiff has openly acknowledged that she had neither. *See* Exhibit 1 to Original Complaint, Letter Brief for Arbitration Evaluation at p.3. Moreover, Plaintiff's Complaint reveals that no meaningful medical evidence establishes that Mr. Palermo's death was asbestos related, as no physical exam was conducted on Mr. Palermo, and no post-mortem pathological testing occurred or is possible at this late date. *Id.*

Rather than alleging the existence of medical evidence that would have entitled her to a distribution from the Trust, Plaintiff merely points to Dr. Beckett's 35-years-after-the-fact speculative assessment of Mr. Palermo's death certificate, as well as to decisions by other asbestos trusts applying different standards and procedures. *Id.* Under the plain language of the Trust's rules, this speculative letter was insufficient medical evidence to support the Plaintiff's claim, and the Trust therefore properly denied that claim.

Desperate for a medical diagnosis sufficient to satisfy the requirements of the TDP, Plaintiff's Amended Complaint urges that Mr. Palermo's alleged mesothelioma was "diagnosed" on June 6, 2003 "by a tribunal of asbestos experts who were part of the Extraordinary Claims Panel of the Mansville Trust."   Amended Complaint at ¶ 17.   However, Plaintiff's argument mistakes an adjudicative proceeding for a medical diagnosis.  The Johns-Mansville Trust follows its own unique procedures and applies different standards than the Trust, and the decisions of the Johns-Manville Trust (or any other asbestos trust) are in no way binding on the Trust.  Nor do the actions of the Johns-Mansville Trust constitute a "diagnosis" as that term is expressly defined in the Trust's TDP.  Because Mr. Palermo was never diagnosed (as that term is defined in the TDP) with an asbestos-related disease, the Plaintiff's claim was properly disallowed by the Trust.

Plaintiff also alleges that Gleason's and Malouf's participation in the Trust's decision to deny her claim "extraordinary claim" status under the Section 5.4(a)(1) of the TDP constituted a breach of fiduciary duty.   Amended Complaint at ¶ 40.   However, as discussed above, this decision was every bit as reasonable as the decision to deny Plaintiff's underlying asbestos claim and, once again, reasonableness and ordinary prudence are all that is required of the individual Defendants.  *See Stark*, 445 F.Supp. at 678; *In re Macfarlane's Estate*, 177 A. at 16.

At most, Plaintiff alleges that Gleason and Malouf made an error in judgment by participating in the denial of a claim that Plaintiff contends should have been granted, but under New York and Pennsylvania law such an error is not enough to support a cause of action for breach of fiduciary duty.  Because the handling of Plaintiff's claim was reasonable and proper – as subsequently confirmed by the pro bono evaluator and arbitrator – Gleason and Malouf fulfilled the only duty that they even arguably owed to the Plaintiff.

3.   **The Claim Against Gleason and Malouf Should Be Dismissed Because Plaintiff is Prohibited From Asserting Claims Against Individual Defendants By Order of the Bankruptcy Court**

The claim in the Amended Complaint against Gleason and Malouf, as individuals, also fails because, as a matter of law, claims against individual defendants are prohibited by the Confirmation Order of the Bankruptcy Court.  In the Confirmation Order, pursuant to 11 U.S.C. § 524(g), the Bankruptcy Court enjoined the prosecution of any asbestos claim unless such action complied with the Trust's organizational documents, which were incorporated into the Plan and approved by the Bankruptcy Court.[5]   One such document, the Trust Agreement, provides as follows:

> No Trustee, officer, or employee of the Asbestos PI Trust . . . shall be liable to . . . any person holding an Asbestos Unsecured PI Trust Claim, or to any other Person, *except for such individual's own breach of trust committed in bad faith* . . . .

Trust Agreement, attached as Exhibit C, § 4.4 (emphasis added).

Plaintiff's claim against Gleason and Malouf is not based on allegations of bad faith but instead is based merely on the disallowance of her claim and the alleged deprivation of certain procedures.   Amended Complaint at ¶¶ 38-42.   Thus, the provisions of the governing Trust documents, as approved by the Bankruptcy Court, require the dismissal of Plaintiff's claim against Malouf and Gleason.  *See O'Hayer v. St. Aubin*, 293 N.Y.S.2d 147, 151 (N.Y. App. Div. 1968); *Stark*, 445 F.Supp. at 683 ("[E]xoneration provisions are recognized under New York law in inter vivos trusts such as these and protect a trustee from liability absent recklessness, fraud or intentional wrongdoing."); *see also In re Cowles' Will*, 255 N.Y. S.2d 160, 174 (N.Y. App. Div.

---

[5] Amended Order Nunc Pro Tunc to July 16, 2004, (I) Replacing Order entered July 16, 2004, (II) Approving Debtors' Disclosure Statement and Solicitation Procedures and (III) Confirming Debtors' Fourth Amended and Restated Joint Prepackaged Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, attached as Exhibit D, ¶ 39 (the "Confirmation Order").

1965) (enforcing clause in trust agreement exonerating trustee except for willful negligence, self-dealing and bad faith), *aff'd* 215 N.E.2d 509 (N.Y.1966).[6]

### D.    Plaintiff's Claim for Negligent Hiring and Supervision Should Be Dismissed

Plaintiff's claim against the Trust for negligent hiring and supervision of Gleason and Malouf should be dismissed with prejudice because, as established *supra*, Plaintiff has no independent cause of action against either of the two individual Defendants.  Under New York law, an employer cannot be held liable for negligent hiring ***unless*** the employee is also individually liable for a tort or claimed wrong against a third person.  *See Primeau v. Town of Amherst*, 303 A.D.2d 1035, 1036, 757 N.Y.S.2d 201 (App. Div. 2003).  In the case at bar, Plaintiff has only alleged that Gleason and Malouf breached their fiduciary duties.  However, as established *supra*, Garner has no actionable cause for breach of fiduciary duty against either Gleason or Malouf.  In the absence of any viable claim against the individual Defendants, Garner's claim against the Trust for negligent hiring and supervision fails as a matter of law.

## IV.  CONCLUSION

As shown above, numerous independent reasons exist to dismiss Plaintiff's fatally defective First Amended Complaint.  For all of these reasons, Defendants respectfully request that, pursuant to Rule 12(b)(6), the Court dismiss with prejudice Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted.  Defendants pray for such further relief as they are justly entitled to in law or in equity.

---

[6] Beyond the provisions in the Trust Agreement and TDP protecting the Trust's officers and trustees from individual liability, there is not a single reported federal asbestos case in which an officer or trustee of an asbestos trust has been held personally liable.

Respectfully submitted,


/s/ Beth W. Bivans
Andrew L. Morrison (AM 1071)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3900 (Tel.)
(212) 536-3901 (Fax)


Beth W. Bivans
Admitted *Pro Hac Vice*
Texas State Bar No. 00797664
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500 (Tel.)
(214) 939-5849 (Fax)

**ATTORNEYS FOR DEFENDANT,
DII INDUSTRIES, LLC ASBESTOS PI
TRUST**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing instrument was served upon the

Counsel for Plaintiff Gail Garner, at the following address in accordance with the Federal Rules

of Civil Procedure, on this 16th day of April, 2009.

Christina A. Agola, Esq.
Law Offices of Christina A. Agola, PLLC
2100 First Federal Plaza
Rochester, New York 14614


/s/ Beth W. Bivans