UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Gail Garner, The Estate of Angelo Palermo,

                      Plaintiffs,

v.

DII Industries, LLC, Mark M. Gleason,
Marcellene Malouf,

                      Defendant.

MEMORANDUM OF LAW

Civ. No.: 08-v-6191 CJS

## INTRODUCTION AND PROCEDURAL HISTORY

### A.    Creation and Administration of the Trust

The Trust arose out of the Plan of Reorganization, filed and confirmed in the Chapter 11 Bankruptcy proceeding styled *In Re Mid-Valley, Inc. et al.*, Case No. 03-35592 JKF pursuant to Section 524(g) of the Bankruptcy Code to assume and discharge the asbestos liabilities of Halliburton and Harbison-Walker. [1] The channeling injunction provisions of Section 524(g) provides for a "qualified settlement fund" for present and future asbestos claimants.  Thereafter, Halliburton, its two subsidiaries (Dresser and Kellogg Brown & Root) and Harbison-Walker all would be protected against claims by a channeling injunction in connection with a trust fund that assumes the liabilities of the debtor "named as a defendant in a personal injury, wrongful death ... action seeking recovery for damages allegedly caused by exposure to asbestos or asbestos-containing products" 11 U.S.C. 524(g)(2)(B)(i)(II); and "establish specific procedures approved by the bankruptcy court, that the new trust must follow in distribution of funds to claimants seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products. 11 U.S.C. § 524(g)(2)(b)(II)(v).

---

[1] All exhibits referenced herein are attached to Defendants Motion to Dismiss.

Halliburton negotiated with their insurance companies for a large portion of funds, and Halliburton hired K&L Gates, a law firm that represents policyholders against insurance companies, as Counsel to the Trust. Halliburton hailed the settlement to stockholders as "good news" that leaves the company "strong and healthy."

The Trust Distribution Procedures (TDP) and the Alternative Dispute Resolution (ADR) procedures document the Trust's intent[2]; statute of limitations[3]; valid asbestos unsecured personal injury trust claim[4]; individual review claim process[5]; alternative dispute resolution (ADR)[6]; determining value of a claim[7]; extraordinary claims process[8]; and authorization to file suit[9].

---

[2] WHEREAS it is the intent of the Settlers, the Trustees, the Legal Representative, and the members of the Asbestos TAC that the Asbestos PI Trust be administered, maintained, and operated at all times as a qualified settlement fund … the Asbestos PI Trust will value, and be in a financial position to pay, all Asbestos Unsecured PI Trust Claims and demands that involve similar claims in substantially the same manner, in strict compliance with the terms of this Asbestos PI Trust Agreement. (Exhibit E, p. 1).

[3] Any claims that were first diagnosed after the DII Industries Petition Date of February 14, 2002…. may be filed with the Asbestos PI Trust within three (3) years after the date of diagnosis or within three (3) years after the DII industries effective date (November 2005) whichever occurs later. (Doc. No. 5, Aff. Of Beth Bivans, Ex. A,5.1, p.10).

[4] As set forth in the TDP, in order to establish a valid Asbestos Unsecured PI Trust Claim, a claimant must make a demonstration of exposure to asbestos-containing products for which one or more of the halliburton entities and/or the harbison-Walker Entities bears legal responsibility.

[5] Subject to the provisions set forth below, an Asbestos PI Trust claimant may elect to have his or her Asbestos Unsecured PI Trust Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in section 5.3(a)(3) above. … Individual Review process for purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision. (Exhibit A. § 5.3).

[6] Asbestos PI Trust, with the consent of the Asbestos TAC and the Legal Representative, shall institute binding and nonbinding arbitration procedures in accordance with the Alternative Dispute Resolution ("ADR") Procedures … to attempt to resolve whether the Asbestos PI Trust's outright rejection or denial of a claim was proper or whether the claimant's medical condition or <u>exposure history meets</u> the requirements of this TDP for purposes <u>of categorizing a claim</u> involving Disease Levels I-VIII.  ……. The ADR Procedures set forth in Attachment A hereto may be modified by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative. … establishment of an Extraordinary Claims Panel to review such claims pursuant to section 5.4(a) above. (Exhibit A. § 5.10(a) p.28).

[7] The Asbestos PI Trust shall liquidate the value of each Asbestos Unsecured PI Trust Claim that undergoes Individual Review based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level. The Asbestos PI Trust will thus take into consideration all of the factors that affect the severity of damages and values within the tort system including, but not limited to: (i) the degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family, or recreational activities, dependencies, special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or were not)

## *B.* *The Trust's Erroneous Denial of Plaintiff's Claim*

As a matter of law, after due process, the DII Trust's Director of Claims, in accordance with the

Trust's Distribution Procedures (TDP), confirmed that Plaintiff provided conclusive evidence of Angelo

Palermo's high asbestos exposure while working directly for one or more of the Halliburton or Harbison-

Walker Entities or their predecessors' valid worksites which qualified Plaintiff's valid PI DII Trust claim,

of which the Halliburton entities and/or the Harbison-Walker entities bears legal responsibility,

compensable in the tort system. The claim was timely, per the TDP requirements, for the statute of

limitation. (Doc. No. 5, Aff. Of Beth Bivans, Ex. A, 5.1, p.10). Instead of categorizing Plaintiff's valid

claim, Defendants outright denied it.    Defendants directed Plaintiff's claim to a hearing in Boston,

Massachusetts. The Plaintiff did not get a disclosure as to the professional connection of the Arbitrator

Douglas Allen and the DII Trust Legal Representative Eric Green as any appointed Arbitrator shall

disclose any past or present relationship with the parties or representative. In addition, the Trust did not

get the consent of the Asbestos TAC and the Legal Representative (Eric Green) when Plaintiff disputed

the non-extraordinary claim status as any dispute as to Extraordinary Claim status shall be submitted to a

special Extraordinary Claims Panel, established by the Asbestos PI Trust with the consent of the Asbestos

TAC and the Legal Representative (Eric Green).  (Exhibit A § 5.4(a)(1) p.21).  Defendants understood

---

caused by asbestos exposure, including Company Exposure as defined in section 5.7(c) below prior to December 31, 1982 ...; (iv) the industry of exposure; and (v) settlements, verdicts, and the claimant's .. (Exhibit A § 5.3(b) p.19
[8] Extraordinary Claim" means an Asbestos Unsecured PI Trust Claim that otherwise satisfies the Medical Criteria for Disease Levels II-VIII and that is held by a claimant whose exposure to asbestos (i) occurred primarily as a result of working in manufacturing facilities of one or more facilities of one or more Halliburton Entities or Harbison-Walker Entities where manufacturing of asbestos-containing products at their facility, and the claim is a tort claim. ..or (ii) experienced at least 75% the result of exposure directly linked by credible evidence to Haliliburton or Harbison-Walker products, ... and his economic damages are exceptionally larger than the normal range ......      Any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel, established by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative. All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review. (Exhibit A. § 5.4(a)(1) p.21).

[9] If the holder of a disputed claim disagrees with the Asbestos PI Trust's determination regarding the Disease Level of the claim, the claimant's exposure history, or the liquidated value of the claim, and if the holder has first submitted the claim to nonbinding arbitration as provided by section 5.10 above, the holder may file a lawsuit against the Asbestos PI Trust.... (Exhibit A. § 7.6 p.32-33).

that "all decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review" (emphasis added) (See Defendants; Memorandum of Law p. 6). The Trust went directly to the Extraordinary Claims Panel in direct non-compliance of procedure as there shall be no ex parte communication between the arbitrator or pro bono evaluator and any counsel or party in any matter. The Trust did not value the Plaintiffs' valid asbestos unsecured asbestos personal injury claims, as the Trust shall liquidate the value of each asbestos unsecured PI trust claim… take into consideration all of the factors …degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question…etc.. (Exhibit A § 5.3(b)(2) p.19).

Ultimately, Defendants violated Plaintiff's right to a recovery of damages. The intent of the court injunction is for strict compliance with the Trust Agreement, and, not for valid high asbestos exposure cases forced to file suit, so as to "limit recovery" from the Trust. Plaintiff and Defendants are before the Court, which could have been prevented if only Defendants' complied.

### 1.    *Plaintiff's Claim Satisfies the Trust's Medical Criteria*

All diagnoses of an asbestos-related malignancy (Disease Levels V-VIII) shall be based upon either (1) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease or (ii) a diagnosis of such a malignant disease level by a board-certified pathologist. (Exhibit A § 5.7(a)(1)(b) p.25).

Dr. William Beckett, MD, MPH (Master of Public Health) Professor, Department of Environmental Medicine (Occupational Medicine Program) Medical Director, Finger Lakes Occupational Health Services, Member of the New York State Occupational Health Network; a University of Rochester Medical Center Program, who specializing in Pulmonary (lungs) and toxic substance diseases, evaluated Mr. Palermo's medical, work history and pictures of his digital clubbing (indicative of impaired blood

-4-

oxygenation resulting from advanced lung scarring) stated: "*Peritoneal mesothelioma is a difficult diagnosis to distinguish from carcinoma metastatic to the abdominal cavity or primary to the stomach, and it seems quite possible that the patient's fatal malignancy could have been a diffuse malignant mesothelioma of the peritoneum rather than the stomach.*"

Dr. Beckett's affidavit was not accepted as a definite diagnosis by any Trust and Defendants' agree: "*Such speculation does not satisfactorily establish that Mr. Palermo suffered from mesothelioma*".

Plaintiff requested Individual Review (Defendants underlined) per the TDP:

... an Asbestos PI Trust claimant may elect to have his or her Asbestos Unsecured PI Trust Claim reviewed for purposes of determining **whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels ....** (Exhibit A. § 5.3).

The Trust may determine that although a particular requirement in the criteria for a Scheduled Disease Category has not been met, in an exceptional medical claim other factors and evidence satisfy the objective of that requirement, and, therefore, the claim should be considered to be within the scheduled disease category. Plaintiff offered a great deal of medical evidence proving that the evidence creditably supported, with reasonable medical probability, that the correct diagnosis of Mr. Palermo's illness was peritoneal mesothelioma, confirmed unanimously by asbestos experts, under Federal Rule of Evidence 702, Testimony by Experts. By precedent, a total of four Trusts (including Manville, Celotex, Eagle-Picher and the H. K. Porter Trust, by Trustee Defendant Mark M. Gleason) confirmed Angelo Palermo's death an asbestos related "Mesothelioma" using the same medical evidence and Trust standards, as the DII Trust, under Chapter 11 U.S.C § 524(g).

Standard For Acceptance indicates that the exceptional medical claims panel shall designate a claim as an exceptional medical claim only if the claimant cannot satisfy the requirements for a given eligible medical category for reasons beyond the control of the claimant, but demonstrates, through clear

and convincing evidence, that the exposed person has an asbestos-related condition that is substantially comparable to the condition of an exposed person who would satisfy the requirements of a given eligible medical category. S.758 *Fairness in Asbestos Compensation Act of 1999*, Sec. 205

Federal Rule of Evidence 702, Testimony by Experts says that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Expert scientific testimony must satisfy three requirements in order to be admissible: first, the expert must be qualified; second, expert's testimony must be reliable and third, evidence must "fit" facts of case. Fed. R. Evid. 702 is broadly phrased. The fields of knowledge, which, may be drawn upon, are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training, or education." Thus, within the scope of the rule, are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses.

Admission of testimony pursuant to rule permitting expert testimony when specialized knowledge of witness will aid the fact-finder in understanding evidence or determining fact in issue will be reversed only on a showing of a clear abuse of discretion.

Plaintiff provided documented proof of her previous valid asbestos personal injury settlement trust claims; and Plaintiff takes offense to Defendants' statement: *"Plaintiff erroneously claimed that other asbestos trusts had acknowledged the validity of her claim.*

-6-

Defendants concluding statement:  *The decisions of attorneys administering other trusts governed by other procedures do not satisfy the Trust's Medical Criteria"*.

The "attorneys" Defendants' speak of, are the Johns-Manville Extraordinary Claims Panel, all who testified before the United States Judiciary Committee on the Fairness in Asbestos Resolution Act of 2003, as asbestos experts. The House Judiciary Committee is a standing committee of the United States House of Representatives. It is charged with overseeing the administration of justice within the Federal Courts, administrative agencies and Federal law enforcement entities. Because of the legal nature of its oversight, committee members usually have a legal background, but it is not required.

Plaintiff meets the TDP:  Credibility of Medical Evidence:  Before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is competent medical evidence of an asbestos-related injury and is consistent with recognized medical standards. ...  Medical evidence (1) that is a kind shown to have been received in evidence by a state or federal judge at trial, ... (Exhibit A § 5.7(a)(2) p.25).

The exception to the exception indicates as follow:  . . . *or the claimant has filed such a diagnosis with another asbestos-related personal injury settlement trust that requires such evidence, the claimant shall provide such diagnosis to the Asbestos PI Trust*... (Exhibit A. § 5.7(a)(1)(c) p.25).

If feasible, the forms used by the Asbestos PI Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations...The claimant may, but will not be required to, provide the Asbestos PI Trust with evidence of recovery from other asbestos defendants and claims resolution organizations. (Exhibit A § 6.2, p. 30).

The credentials of the three Johns-Manville Extraordinary Claims Panel of experts are impressive:

**Dr. Mark A. Peterson** studied asbestos litigation for over twenty years as a founding member of the RAND Corporation's Institute for Civil Justice. He has written about and participated as an expert in

asbestos litigation for defendants, insurance companies, actuarial firms, other businesses, law firms, claimants' committees in bankruptcy and other mass tort litigation. Developed claims procedures as a consultant and expert for ten asbestos trusts.    Peterson worked for four U.S. District and Bankruptcy Courts as the Courts' expert on how asbestos claims are valued and on asbestos claims procedures and trusts. The Manville Trust "Special Advisor to the courts".   Peterson, a Trustee of an asbestos trust and Director of a nonprofit corporation that administers the process for allowing and paying claims for four asbestos trusts. He participated as an expert on asbestos liabilities in over 20 bankruptcies of asbestos defendants.   He published peer-reviewed scholarly articles on mass torts, asbestos litigation, claims facilities for paying asbestos and other mass tort claims, and how medical and legal issues determine the values of asbestos bodily injury claims. He taught courses on mass torts at UCLA Law School and the RAND Graduate Institute.  He is a lawyer, a graduate of Harvard Law School and has a doctorate in Social Psychology from UCLA.   Recognized by courts as an expert on all areas addressed, and all comments come from scholarship and work as an expert on asbestos litigation.

**Elihu Inselbuch**'s practice at Caplin & Drysdale consists largely of representing plaintiffs and defendants in a whole range of commercial and tort litigation in federal and state courts. Since 1985, he was the first retained to act for the Asbestos Claimants' Committee in the Manville reorganization, gaining prominence as one of the nation's leading attorneys in asbestos creditors' rights litigation. Working with the asbestos plaintiffs bar, he represented their constituency in a number of large bankruptcies and class actions, including Johns Manville, Jim Walter Corp., Raytech Corporation, Babcock & Wilcox, Pittsburgh Corning, Armstrong World Industries, GAF, W.R. Grace, United States Gypsum, Federal Mogul, Owens Corning, and *Ortiz v. Fibreboard*. He was also a member of the informal asbestos claimants committee of the Halliburton prepackaged Bankruptcy.

**David Austern** oversees the Manville Personal Injury Settlement Trust, which compensates asbestos disease victims. "This is how the trust works: As claims are filed by lawyers for would-be asbestos

victims, they are reviewed by the trust's legal and medical experts and claims deemed valid are paid by revenues generated primarily by Johns-Manville Corporation". He teaches a legal-ethics course at American University.

Plaintiff qualified as an exceptional medical claim and fulfilled all the DII Trust requirements per the Medical/Exposure criteria for an allowable valid Category VIII Mesothelioma claim and it is timely.

### 2.    *Plaintiff's Asbestos PI Claim Satisfies the Trust's Statute of Limitations*

Defendants' argue that Plaintiff discovered the reasons behind her father's death in 2000.    (See Defendants' Memorandum of Law p. 6).  Under Defendants' theory of Plaintiff's February 2000 date, the claim would be within three years of filing, as per the calculations: February 2000 to February 14, 2002 (when the statute of limitation was tolled to November 9, 2005), adding one more year, the date would be November 9, 2006 and the Plaintiff filed on April 5, 2006; but that argument is a distinction without a difference as there was "no legal diagnosis" just Plaintiff's speculation.  The "diagnosis" date is June 6, 2003, with the Extraordinary Claims Panel decision under Fed. R. Evid. 702, Testimony by Experts. Plaintiff filed on April 5, 2006, which complies with the TDP and New York's 3-year requirement for the filing of an asbestos personal injury lawsuit upon diagnosis of an asbestos-related disease.

### 3.    *Plaintiff's Claim Satisfies the TDP Requirements of an "Extraordinary Claim"*

'Extraordinary Claims' means an Asbestos Unsecured PI Trust Claim that otherwise satisfies the medical criteria and must fulfill one of two stipulations. Plaintiff's claim is an Extraordinary Claim because Angelo Palermo's exposure to asbestos occurred (i) primarily as a result of working in manufacturing facilities of one or more facilities of one or more Halliburton Entities or Harbison-Walker Entities where manufacturing of asbestos-containing products at their facility.  The claim is a tort claim that is not otherwise barred by a statutory worker's compensation program.  The Social Security records listed the facilities, entities, and timeframe, and the Trust *qualified* Plaintiff's claim for company exposure. (ii) The second part is where Angelo Palermo experienced at least 75% the result of exposure

-9-

directly linked by credible evidence to Haliliburton or Harbison-Walker products, and that there is little likelihood of a substantial recovery elsewhere and his economic damages are exceptionally larger than the normal range. ... (Exhibit A § 5.4(a)(1) p.21).

Angelo Palermo experienced high asbestos exposure, for 29 years from 1937-1966, as a Union Insulation Mason, working for companies affiliated with the DII Trust. Specifically, Angelo Palermo worked from 1941-1945, for Symington Gould (later renamed Symington Wayne), a direct Subsidiary or "Entity" of Halliburton where application of asbestos-containing products-especially insulation materials were a key element of the manufacturing process utilized or installed regularly and in large quantities at these locations. Symington-Gould received government contracts; a maker of ships, tanks, railroad parts, large and small armor (machine guns and shells) and produced iron and steel foundry products; cast armor plates, electric steel castings, airplane engine cylinder castings and static turbine castings. Plaintiff wrote "A109" on the Claim Form. Also noted that Mr. Palermo worked directly for Johns-Manville (largest asbestos company in the world), City of Albany (high asbestos exposure site), etc., and the responsibility of the DII Industries Trust; and listed on the Claim Form as B2434, B2435, B2436, B2437 and B4247, in addition to, an Affidavit within the claim package.

Angelo Palermo met both (i) and (ii) qualifying factors and all requirements by tort law of high financial loss. After much pain and suffering, Palermo died at age fifty-one leaving four dependents in misery.    He worked twenty-nine years in the industrial asbestos industry, using Harbison-Walker/Halliburton products at valid job sites, while the companies failed to warn and protect against the dangers of asbestos. Palermo lost fourteen years of lost income, etc.; and qualifying as a timely valid compensable tort claim with an asbestos related disease of mesothelioma. Plaintiff requested numerous times for her claim to be reviewed for extraordinary status as any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel established by the Asbestos PI Trust with the

-10-

consent of the asbestos TAC and the legal representative. (Exhibit A. § 5.4(a), p. 21). Plaintiff's requests went unanswered.

Defendants went directly to the Extraordinary Claims Panel in non-compliance of TDP/ADR procedures: "All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review." Plaintiff's claim failed to meet any of these prerequisites and therefore was denied extraordinary claims status. This denial was considered and affirmed by the Trust's Extraordinary Claims Panel.

Defendants admit ex parte communications with the DII Extraordinary Claims Panel, as they did not get the consent of the Asbestos TAC or the Legal Representative but went directly to the DII Trust's Extraordinary Claims Panel for consideration and affirmation as there shall be no ex parte communication between the arbitrator or pro bono evaluator and any counsel or party in any matter.

Plaintiff made the Trust, Executive Director and Trustee aware, with documented evidence of her prior trust claim with the Manville Trust. The model for all asbestos Trusts, as precedent to the proper procedure for Plaintiff's valid compensable DII asbestos unsecured personal injury claim, so as to be categorized, reviewed by the DII Extraordinary Claims Panel, and then to value arbitration. Plaintiff was not afforded all the administrative remedies under the TDP; as Plaintiff qualified as a timely compensable exceptional medical "mesothelioma claim"; and fulfilled all company exposure requirements as an "Extraordinary Claim"; under the Individual Review Process for purposes of determining whether the liquidated value of the claim exceeds the scheduled value … (Exhibit A § 5.3; as the Court will tolerate distinctions among groups.

**4.      *The Pro Bono Evaluator and Arbitrator Uphold the Trust's Decision***

The Trust, pro bono evaluator, and Trust's Motion To Dismiss document [Page 4 B] <u>confirmed</u> <u>that the Plaintiff's claim satisfied the TDP's exposure criteria,</u> thus Plaintiff qualified as a valid asbestos unsecured PI Trust claim per procedure but the Trust, pro bono and the nonbinding arbitrator denied the

claim.   The ADR and Trust Distribution Procedures require a claim reviewed by a qualified and independent pro bono evaluator and arbitrator with no conflicts of interest or ex parte communication but Plaintiff's claim has proof to the contrary. The Arbitrator did not have to give a reason for his denial on the arbitration award.

The Plaintiff received a written response from the Pro Bono evaluator but the Plaintiff questions her knowledge: *"A comparison between Mr. Palermo's trade as a mason, and the companies for whom he worked, in light of the products for which this Trust is responsible, further supports the conclusion that it is highly unlikely there could be evidence of very substantial "company exposure" in this case."* (Exhibit C. p.4; U.S. v. Scavo, 593 F.2d 837 (Minn. 1975)).  Not all expert testimony is admissible under Rule 704 of these rules, but, rather, expert testimony must still meet criterion of helpfulness expressed in this rule and is subject to exclusion if its probative value is substantially outweighed by risks of unfair prejudice, confusion or waste of time.

## 5.    *Plaintiff Rejects the Trust's, the Evaluator's and the Arbitrator's Decisions and Files this Action*

Plaintiff rejected the Trust, pro bono, and nonbinding arbitrator's decision, in a letter dated September 9, 2007, which was never acknowledged (except by the Trust's counsel in the August 25, 2008 Motion to Dismiss, page 7). Plaintiff was ignored until she hired an attorney to send another letter on October 2, 2007, which the Trust acknowledged and authorized Plaintiff to file suit. Plaintiff filed on April 25, 2008.

Plaintiff's Motion to vacate the Panel's conditional Transfer Order (CT0-309) was granted to remain in New York State:

> *"After considering all argument of counsel, we (United States Judicial Panel on Multidistrict litigation) find that transfer of Garner to the Eastern District of Pennsylvania would not necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation at the present time.   In Garner, plaintiff is*

> essentially challenging the manner in which her claim for compensation
> was handled by defendant DII Industries, LLC, Asbestos PI Trust and
> certain individuals employed by the trust. The issues appear largely
> case-specific, and we are therefore persuaded that the motion to vacate
> should be granted."

### FACTS AVERRED IN THE COMPLAINT

Angelo Palermo was a union insulation mason for 29 years, from 1937 through 1966, in the
construction asbestos industry. (Doc. No. 28 ¶ 11).

Palermo "spray coated' and handled asbestos containing products while working directly for one
or more of the Haliburton or Harbison-Walker Entities or their predecessors' valid work sites. (Doc. No.
28 ¶ 12).

Specifically, Palermo worked from 1941-1945 for Syington Gould (later renamed Symington
Wayne), a direct subsidiary of Haliburton and Harbison-Walker. (Doc. No. 28 ¶ 13).

Palermo died on April 23, 1966. (Doc. No. 28 ¶ 14).

Palermo's death certificate states that the immediate cause was acute liver failure due to
"metastasis cancer due to primary stomach (place of origin)." (Doc. No. 28 ¶ 15).

However, at the time of Palermo's death, the state of medical or scientific knowledge was such
that the causation of Palermo's injury could not have been identified at the time of his death. (Doc. No.
28 ¶ 16).

On June 6, 2003, Palermo was diagnosed, posthumously, with mesothelioma by a tribunal of
asbestos experts who were part of the Extraordinary Claims Panel of the Mansville Trust. (Doc. No. 28 ¶
17).

On October 27, 2003, David Austern, president of the Mansville Trust, confirmed the tribunal's
determination that Palermo's claim is an Extraordinary Mesothelioma claim caused by exposure to
asbestos at Palermo's work sites. (Doc. No. 28 ¶ 18).

On April 5, 2006, within three years of the determination of Palermo's cause of death as an
Extraordinary Mesothelioma claim, Plaintiff filed a claim with the DII Trust. (Doc. No. 28 ¶ 19).

On April 4, 2006, within three years of the determination of Palermo's cause of death as an

Extraordinary Mesothelioma claim,   Plaintiff filed a pro se asbestos injury liability tort claim with DII Industries, LLC for the Estate of Angelo Palermo. (Doc. No. 28 ¶ 20).

The DII Trust Director of Claims, in accordance with the Trust's Distribution Procedures (TDP), confirmed that Plaintiffs provided "conclusive evidence" of Angelo Palermo's high asbestos exposure in his capacity as a union insulation mason in the asbestos industry. (Doc. No. 28 ¶ 21).

The Johns Mansville and Celotex Extraordinary Claims Panels unanimously diagnosed Angelo Palermo's cause of death and an asbestos disease of "mesothelioma" and "extraordinary" and issued financial restitution to his estate. (Doc. No. 28 ¶ 22).

A total of 4 Trusts, including Mansville, Celotex, Eagle-Pincher and H.K. Porter trust, confirmed Palermo's death an asbestos related "mesothelioma" using the same medical evidence and Trust standards as the defendant. (Doc. No. 28 ¶ 23).

All decisions of the Extraordinary Claims Panel were deemed final and "not subject to any further administrative or judicial review." (Doc. No. 28 ¶ 24).

Notwithstanding, Defendant rejected Plaintiff's numerous legitimate requests for a  review of the Extraordinary Claim Panel. (Doc. No. 28 ¶ 25).

Defendants did not abide by the Court approved procedures contained the TDP/ADR in that they failed to notify Plaintiff of any potential conflicts, that they failed to allow Plaintiffs to go before the DII Extraordinary Claims Panel, failed to value Plaintiff's claims and engaged in ex-parte communications, i.e. defendants went directly to the Panel without the consent of the Abestos "TAC" and the Legal Representative. (Doc. No. 28 ¶ 26).

After the Pro Bono Evaluator confirmed the Trusts' denial, the Plaintiffs requested non-binding arbitration; thereafter, the Plaintiff was denied recovery. (Doc. No. 28 ¶ 27).

## DISCUSSION

### A.    Standard of Review

A complaint may be dismissed pursuant to Rule 12(b)(6) where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S.,

127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (U.S. May 21, 2007). As the Second Circuit has recently stated, *Twombly* requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, F.3d, 490 F.3d 143, 2007 U.S. App. LEXIS 13911, 2007 WL 1717803, *11 (2d Cir. Jun. 14. 2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Twombly,* 127 S. Ct. At 1964-74 (internal quotation omitted). In order to state a claim, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* At 1965. Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, must be dismissed." *Id.* At 1974.

In considering a motion under Rule 12(b)(6), courts are constrained to consideration of the facts as stated in the complaint, any documents which are attached to the complaint, and any documents which are incorporated into the complaint by reference. See *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). In determining whether a plaintiff has stated a claim on which relief can be granted, the court must operate under "the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 127 S. Ct. at 1965 (citing *Swierkiewicz v. Sorema,* N.A., 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed 2d 1 (2002)). "However, legal conclusions deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *Black v. Town of Harrison,* 2002 U.S. Dist. LEXIS 16597, 2002 WL 31002824, at *3 (S.D.N.Y. Sept. 5, 2002)(internal quotation omitted). All inferences are drawn in favor of the non-movant. *Sheppard f. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994).

**B.    Documents Outside the Pleadings**

Without transforming Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) into a motion for summary judgment under Fed. R. Civ. P. 56, the Court may take notice of material that is a matter of

public record, *Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004), as well as documents integral to the complaint regardless of whether they are incorporated by reference or not. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

### Point I

### *Plaintiff's Negligence Claim Against the Trust is Timely as a Matter of Law*

Defendants claim that Plaintiff failed to meet the three year Statute of Limitations pursuant to the discovery rule set forth in CPLR 214-c(2),[i] *Rothstein v. Tennessee Gas Pipeline Co.;* 87 N.Y.2d 90, 637 N.Y.S. 2d 674, 661 N/E. 2d 146 (1995). There is seemingly no limit as to when the date of the exposure occurred, making discovery of the injury the only relevant factor in determining the running of the statute of limitations. Here, Angelo Palermo died on April 23, 1966 and his death certificate states that the immediate cause was acute liver failure due to metastasis cancer due to primary stomach (place of origin). However, the causation of Palermo's injury could not have been identified at the time of death; as the diagnosis was for a newly identified disease; from an inexperienced resident doctor, Dr. Magdi Kodsi, who received his license two and a half years after Mr. Palermo's death and went on to become a plastic surgeon. It was not until June 6, 2003 that a tribunal of asbestos experts, the Extraordinary Claims Panel of the Manville Trust, under Fed. R. Evid. 702, Testimony by Experts, diagnosed Angelo Palermo's death asbestos related.

On October 27, 2003, David Austern, President of the Manville Trust confirmed Plaintiff's claim as "Extraordinary Mesothelioma" and issued a check for financial restitution.    On    April    5,    2006, Plaintiff filed a claim with the DII Trust and in so doing, relied on the simple language that this complied with the New York's three year requirement for the filing of an asbestos personal injury lawsuit upon diagnosis of an asbestos-related disease. Per the TDP, "any claims that were first diagnosed after the DII Industries Petition Date of February 14, 2002…may be filed with the Asbestos PI Trust within three (3) years after the date of diagnosis or within three years after the DII Industries effective date (November 2005) whichever occurs later." (Doc. No. 5, Aff. Of Beth Bivans, Ex. A, 5.1, p.10).

Here, the latest date for Plaintiff to file is November 20, 2008 and Plaintiff filed on April 5, 2006, which is within three years from Angelo Palermo's June 6, 2003 diagnosis. Plaintiff clearly meets both qualifying dates. For all of the above stated reasons, Plaintiff's claim for negligence against the Trust was timely.

***Point II***

***Plaintiff's Claim Against Gleason and Malouf Stated A Breach of Fiduciary Duty Claim***

Breach of fiduciary duty is a tort that arises from a violation of a relationship of trust and confidence such as that of an agent to his principal or a lawyer to his client. *Rich v. New York Co. & H.R.R. Co.,* 87 N.Y. 382, 390 (1882). It is a breach of fiduciary duty for the fiduciary duty to injure or act contrary to the interest of the person to whom the duty of loyalty is owed. *Mandelblatt v. Devon Stores,* 132 A.D. 2d 162, 168, 521 N.Y.S. 2d 672 (2d Dept. 1987).

In New York, fiduciary relationship requires a showing of a relation between two persons "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within a scope of the relation." *ÊBC I. Inc. v. Goldman Sachs & Co.* 5 N.Y. 3d 11, 19, 799 N.Y.S. 2d 170, 832 N.E. 2d 26 (2005). New York courts further recognize that "[a] fiduciary relationship only arises when one has reposed trust and confidence in the integrity and fidelity of another which thereby gains influence or assumes control and responsibility.

Fiduciaries appear in a variety of forms and in a variety of contexts. Agents, partners, receivers, trustees, and executors are entrusted in one way or another with the conduct of the affairs or the protection of the rights of another. In many cases, those rights are purely economic and a breach of the fiduciary's duty, controlled by the substantive law governing the relationship, (Restatement (Second) of Torts §874), and normally, generates economic loss.

-17-

In order to establish a breach of fiduciary duty, there must be: (1) the existence of a fiduciary relationship between the parties; and (2) a breach of the duty flowing from that relationship. *Mandelblatt,*132 A.D. 2d 162.

Angelo Palermo was exposed to high concentrations of asbestos for 29 years from 1937-1966, in the construction asbestos industry as a Union Insulation Mason, handling and spray coating asbestos, and specifically, worked from 1941-1945 for Symington Gould, later renamed Symington Wayne, a direct Subsidiary of Halliburton and Harbison-Walker entities which bears legal responsibility.

As set forth in the TDP, in order to establish a valid asbestos unsecured PI trust claim, a claimant must make a demonstration of exposure to asbestos-containing products for which one or more of the Halliburton entities and/or the Harbison-Walker entities bears legal responsibility. (Exhibit 9, ADR, p.2). Plaintiff has a valid asbestos unsecured personal injury trust claim against the DII trust; Plaintiff's valid unsecured asbestos claim makes Plaintiff a "beneficiary" of the Trust, and therefore creates the existence of a legally recognized fiduciary relationship with the Defendants. Further, as described above, Plaintiff's claim is timely as it is clearly within the Statute of Limitations.

Plaintiff alleges that the Defendants' willful misconduct constitutes a breach of fiduciary duty. That misconduct lies in Defendants' non-compliance with the court injunction per the terms of the Plan of Reorganization, as they did not following the Trust Distribution Procedures (TDP/ADR) resulting in Plaintiff's ostensible valid unsecured asbestos PI claims not being categorized for disease classification, and without proper consent to go to the Extraordinary Claims Panel to determine extraordinary status, which ultimately resulted in not valuing Plaintiff's claims for a loss of recovery of damages. That misconduct also lies in failing to apprise Plaintiff of any potential conflicts. Defendants have the wrong impression as to their lack of disclosure of Arbitrator (Douglas Allen) and the pre-existing business relationship with DII Trust's Legal Representative (Eric Green); and as to their influence on Plaintiff's case:

> "*Nothing suggests, and Plaintiff's Complaint does not allege, that the Arbitrator's relationship with Mr. Green somehow influenced his decision in this case. Moreover, because this relationship was irrelevant to the arbitration, there is no allegation that the Arbitrator was obliged to disclose it to the parties. However, even if Allen should have disclosed this relationship, Allen remains immune from suit. See John Street Leasehold, L.L.C v. Brunjes ... (finding that an action against a arbitrator based on his failure to disclose his relationship with an opposing party's attorney was barred).*

(Defendants 1st Motion to Dismiss, October 17, 2008, p.10).

Plaintiffs, Trust and Beneficiaries incurred added expenses as the Trust Arbitration Hearing was scheduled at Resolutions, LLC, in Boston Massachusetts versus written submissions only. **The DII Legal Representative Eric Green is the co-founder and principal of Resolutions, LLC, in Boston, Massachusetts** and the **Arbitrator Douglas Allen is the solo practitioner**. Plaintiff's many requests went unanswered when asked for consent to go before an Extraordinary Claims Panel as, any dispute as to extraordinary claim status shall be submitted to a special extraordinary claims panel established by the asbestos PI trust with the consent of the asbestos TAC and the legal representative (Exhibit A p. 21). The legal representative (Eric Green) shall serve in a fiduciary capacity, representing the interests of the future asbestos PI trust claimants, for the purpose of protecting the rights of persons and the trustees (Mark Gleason) must consult with the legal representative (Eric Green) on matters affecting the PI trust. (Exhibit E, § 2.1, 2.2, pp. 5, 6, 16, 17, 19).

Defendants participated in ex parte communications with the Extraordinary Claims Panel; and when the Arbitrator left the Arbitration Hearing with the Defendants, he left Plaintiffs by themselves in the room. Plaintiff pro se disputed issues of material fact, in reference to the Trust's non-compliance with the TDP and ADR, directly to the Defendant Trustee Gleason and Defendant Executive Director Malouf of the Trust, Plaintiff did not receive direct answers. Instead, the Defendants hired an outside law firm to dispute the compensable claim. Plaintiff's claim was not fully exhausted per the TDP administrative remedies and Defendants clearly denied the claim outside the procedures.

Based on the foregoing, it is clear that Plaintiff has sufficiently stated a claim for breach of
fiduciary duty against Gleason and Malouf and therefore defendants' instant motion should be denied.

### Point III

### The Individual Defendants Gleason and Malouf can be held Liable

Plaintiff stated claims against Defendants Gleason and Malouf, as individuals, are valid pursuant
to the Trust, as Plaintiff is entitled to seek relief from Trustees or officers or employees of the Trust for
such individuals own breach of the trust committed in bad faith or with willful misappropriation.

Plaintiff is not satisfied with Defendants non-compliance of the terms of the TDP, and the
premature denial of her claim, as Defendants have the burden to demonstrate that they complied with all
the undisputed terms of the TDP/ADR, which they cannot.

The Trust states that no trustee, officer, or employee of the asbestos PI trust . . . shall be liable to .
. . any person holding an asbestos unsecured PI trust claim, or to any other person, except for such
individual's own breach of trust committed in bad faith or will misappropriation. . . . (Exhibit E § 4.4,
p.12).

Plaintiff claims intentional wrongdoing, breach of trust, and bad faith in the erroneous processing
of her valid compensable asbestos personal injury liability claims and violation of her right to recovery.

The Defendants state:    Ironically, *had Gleason and Malouf authorized the distribution of funds
to Plaintiff, they may have violated their fiduciary duties to the Trust and its legitimate beneficiaries, as
Gleason and Malouf reasonably concluded that the Plaintiff has no entitlement to such funds."* (See
Defendants Memorandum of Law p.12).

Plaintiff would like to comment on Defendant Gleason, and his authorization to distribute funds
to Plaintiff and the Estate of Angelo Palermo. At the DII Trust Arbitration Hearing, Plaintiff mentioned
that Defendant Gleason, as Trustee for the H.K. Porter Trust, had already approved her father's claim as a
"Mesothelioma" for the H.K. Porter Trust, at the maximum payment. Plaintiff was told by Defendants'

-20-

Counsel that, "It was less expensive for Mr. Gleason to settle her claim with the H.K. Porter Trust than to litigate." Plaintiff responded: "My claim was valid and it would not be fair to the other beneficiaries if that is how the Trusts operate." There was no comment in response from Defendants. Plaintiff also addressed that she had settled three trust "Mesothelioma" claims (two of which were "Extraordinary") at above average 'Trust' pro rata settlements; and one pending confirmed "Mesothelioma" claim, all with the same evidence and the same Trust standards under Chapter 11, section 524(g), with the only difference being that the DII Trust pays 100% settlement value. Defendants' comment: *"Beyond      the provisions in the Trust Agreement and TDP protecting the Trust's officers and trustees from individual liability, there is not a single reported federal asbestos case in which an officer or trustee of an asbestos trust has been held personally liable."* (Defendants' Motion to Dismiss p.17).

Plaintiff's claim was the first to go to arbitration and a hearing in Boston. Plaintiff is a member of a "class" with "ramifications for the public at large" and her claim will set a precedent for future compliance with the court order. Plaintiff has a strong conviction to do her civil duty to prevent other Claimants from experiencing the same misrepresentation, injustice and financial burden that was accorded Plaintiff by Defendants. Defendants are obligated, "in strict compliance" to follow the Court approved procedures under the terms of the Plan of Reorganization, which they have not in this case, and Plaintiff may properly raise an issue as to Defendants' neglect of duty and failure to properly perform.

The trust indicates that administrators should act in accordance with Article 1.2 at all times. (Exhibit E § 2.1, p.3 (Agreement of Trust, purpose to comply in all respects with the requirements of a trust set forth in 524(G)(2)(B)(I) of the Bankruptcy Code, of this Asbestos PI Trust Agreement)). Without limiting the generality of Article 2.1(A) above, and except as limited below, the Trustees shall have the power to: . . . (vii) sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding . . . (Exhibit E § 2.1, p. 4 (vii).

-21-

In accordance with Article 4.6, Indemnify (and purchase insurance indemnifying) the Trustees, the legal representative, the members of the asbestos TAC, and the members, officers, employees, agents, advisors, and representatives of the asbestos PI Trust and the legal representative to the fullest extent that a corporation or trust organized under the law of the asbestos PI Trust's situs is entitled to indemnify and/or insure . . . (Exhibit E §2.1, p. 5 (xv)). The trustees may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee, a member of the asbestos TAC, legal representative, officer, employee, agent, representative, attorney, advisor, or consultant of the asbestos PI trust, or additional Indemnitee against liability asserted against, or incurred by, such individual in that capacity or arising from his or her status . . . (Exhibit E § 4.6 (e), p. 13).

Plaintiff alleges that Defendants acted with deliberate reckless indifference and disregard of the truth, in willful misconduct, intentional wrongdoing, violation of duty, and not merely on a disallowance of "her" claim; that duties that are required to, in accordance with, all provisions and purposes of the trust, and in the best interest of the beneficiaries, of reasonable care and skill; through communication letters (rejection and complaints) at the time of the occurrence, and the Complaint; and not by the Plaintiff's *"imaginative attempt to elevate the routine rejection ... " as* Defendants Mark Gleason and Marcellene Malouf committed such breaches of trust in bad faith.

Based on the foregoing, it is clear that Defendants Gleason and Malouf can be personally liable for Plaintiff's claims and therefore Defendants' instant motion should be denied.

### Point IV

### The Trust Can Be Held Liable For Negligent Hiring and Supervision

Where an employee cannot be held to be vicariously liable under a theory of respondent superior, a claim for negligent supervision or retention may still lie. *Shiela C. v. Povich*, 11 A.D. 3d 120, 129, 781 N.Y.S. 2d 342 (1st Dept. 2004).

Claims for negligent supervision or retention arises when an employer knowingly places an employee in a position to cause foreseeable harm, harm that injured party most probably would not have had if employer had taken reasonable care in supervising or retaining employee. Plaintiff may recover from against Defendant DII Trust for their alleged negligence in hiring, supervising, or retaining Gleason and Malouf. (See *Primeau v. Town of Amherst*, 303 A.D. 2d 1035, 1036; cf. *Boren v. Capital Dist. Transp. Auth.*, 307 A.D. 2d 1059, 1061-1063; *Acevedo v. Audobon Mgt.*, 280 A.D., 2d 97-98).

Applying the forgoing principles, it is evident that Plaintiff's complaint states a prima facie case of negligent hiring and supervision against the Defendant DII Industries, LLC Asbestos PI Trust.

## CONCLUSION

Plaintiff's allegations are premised on Defendants' non-compliance with the terms of the Plan of Reorganization (TDP/ADR) procedures for Plaintiff's valid unsecured asbestos personal injury liability tort claims, and breach of fiduciary duty for Defendants' actions that violated the Plaintiff's right to a recovery of damages. Plaintiff met the TDP statute of limitation requirements within the Discovery Rule 214-C. Plaintiff provided clear and convincing evidence that the exposed person, Angelo Palermo, had an asbestos-related condition that is substantially comparable to the condition of an exposed person who would satisfy the requirements of the "mesothelioma" category. This was done through Plaintiff's submissions which met the Individual Review Exceptional Medical Claim Process requirements for *Credibility of Medical Evidence (1) That is the kind shown to have been received in evidence by a state or federal judge at trial...* as the asbestos related "diagnosis" of the disease mesothelioma was determined under Federal Rule of Evidence 702, Testimony by Experts, with a unanimous designation by three (3) members of the Johns-Manville Extraordinary Claims Panel of experts, all who testified before the U.S. Judiciary Committee for the Fairness in Asbestos Resolution Act of 2003. By precedent, Plaintiff previously qualified for four (4) Asbestos PI Settlement Trust mesothelioma claims (one by Defendant Gleason). In addition, Plaintiff qualifies for the DII Trust "extraordinary" claim status, as Angelo

Palermo had high excessive asbestos company exposure while working directly for a subsidiary of Halliburton, during the timeframe of 1941-1945. Mr. Palermo's total work history exposure (29 years), while handling and spray-coating asbestos, was from 1937-1966, where he worked directly for Johns-Manville (largest asbestos company) and City of Albany (high asbestos exposure); companies listed as the responsibility of the DII Industries PI Trust. Mr. Palermo experienced much pain and suffering and died at fifty-one years old; leaving four dependants damaged. Plaintiff alleges that Defendants' willful misconduct constitutes a breach of fiduciary duty. That misconduct lies in not following the DII Trust Distribution Procedures, resulting in Plaintiff's ostensible valid unsecured asbestos PI claim not being categorized for disease classification, and without proper consent to go to the Extraordinary Claims Panel to determine extraordinary status, which ultimately resulted in not valuing Plaintiff's claims for a violation of right to recovery of loss of damages. That misconduct also lies in failing to apprise Plaintiff of any potential conflicts, and participating in ex parte communications. When the pro se Plaintiff disputed issues of material fact, in reference to, the Trust's non-compliance with the TDP and ADR directly to Defendant Trustee and Defendant Executive Director of the Trust, Plaintiff did not receive direct answers. The goal of the Trust is to prevent the impact of lawsuits against the debtor's fresh start but Defendants encouraged litigation in the Court, even though they could have avoided further judicial review and maximize the value available for all beneficiaries.

Plaintiff has a timely valid DII Trust asbestos personal injury product liability tort claim with legal feasibility for relief that is plausible on its face. The simple conclusion by the Defendant that the Plaintiff is merely "complaining about the outcome of these proceedings which repeatedly denied her claim" does not weigh in the fact that Plaintiff complied with all the rules of the Trust Distribution Procedures and was not afforded all the administrative remedies that were available to her. Plaintiff is not satisfied with the premature denial of her claim, and Defendants have the burden to demonstrate strict compliance with all the terms of the TDP/ADR, which they cannot. Plaintiff's allegations of Defendants'

-24-

breach of fiduciary duties are premised on the Defendants non-compliance with the terms of the Plan of Reorganization under Chapter 11 of the Bankruptcy Code and the DII Trust Agreement. Defendants' willful misconduct lies in Defendants failure to perform as required by the channeling injunction provisions of Section 524(g) and the Court-approved Trust Distribution and Alternative Dispute Procedures.     Plaintiff may recover from the Defendants individually; and the Trust, for alleged negligence in hiring, supervising, or retaining Gleason and Malouf.

Respectfully, Plaintiff requests that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint For Failure to State A Claim Upon Which Relief Can Be Granted be vacated pursuant to Civil Rules of Procedure 12(b)(6), as the Plaintiff stated a claim upon which relief can be granted.


Dated: July 31, 2009
Rochester, New York


                              Respectfully Submitted,

                              /s/ Christina A. Agola, Esq.

                              _____
                              Christina A. Agola, Esq.
                              Christina A. Agola
                              Attorneys and Counselors at Law PLLC
                              2100 First Federal Plaza
                              Rochester, New York 14614
                              585.262.3320 (phone)
                              585.262.2641 (fax)
                              caaesq@rochester.rr.com